# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 07/07/2020 04:59 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk
20STCV25558

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

|  | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SUNRISE VILLA CULVER CITY; See "Additional Parties Attachment"

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

GERALD HOPMAN, in and through his Successor-in-Interest, Jessica Hopman, and JESSICA HOPMAN, an individual

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):*<br>20STCV25558 |
|---|---|

Los Angeles Superior Court
111 North Hill Street, Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lisa Trinh Flint, MORAN LAW, 5 Hutton Centre Drive, Ste. 1050, Santa Ana, CA 92707, (714) 549-0333

| DATE: July 7, 2020<br>*(Fecha)* 07/07/2020 | Sherri R. Carter Executive Officer / Clerk of Court<br>Clerk, by<br>*(Secretario)* | N. Alvarez | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*:   Welltower OPCO Group LLC dba Sunrise Villa Culver City

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
       ☒ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify)*:
4. ☒ by personal delivery on *(date)*: 07/10/2020

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov*<br>American LegalNet, Inc.<br>*www.FormsWorkflow.com* |
|---|---|---|

SUM-200(A)

| SHORT TITLE:<br>HOPMAN v. SUNRISE VILLA CULVER CITY, et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA CULVER CITY; SUNRISE SENIOR LIVING MANAGEMENT, INC.; SHANE FOWLER, an individual; and DOES 1 through 50, inclusive,

Page   2   of   2

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Electronically FILED by Superior Court of California, County of Los Angeles on 07/07/2020 04:59 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk
20STCV25558

MORAN LAW
Michael F. Moran SB# 121665
Lisa Trinh Flint SB# 243468
5 Hutton Centre Drive, Suite 1050
Santa Ana, CA 92707
Telephone: (714) 549-0333
Facsimile: (714) 549-0444

Attorneys for Plaintiffs, GERALD HOPMAN, in and through his Successor-in-Interest,
Jessica Hopman, and JESSICA HOPMAN, an individual.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

|  |  |
|---|---|
| GERALD HOPMAN, in and through his Successor-in-Interest, Jessica Hopman, and JESSICA HOPMAN, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> SUNRISE VILLA CULVER CITY; WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA CULVER CITY; SUNRISE SENIOR LIVING MANAGEMENT, INC.; SHANE FOWLER, an individual; and DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO.: 20STCV25558 <br><br> **PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL:** <br><br> 1. **ELDER ABUSE** (<u>Welfare and Institutions Code</u> § 15600, *et seq.*) <br> 2. **NEGLIGENCE** <br> 3. **BREACH OF CONTRACT** <br> 4. **WILLFUL MISCONDUCT** <br> 5. **WRONGFUL DEATH** |

Plaintiffs, GERALD HOPMAN, in and through his Successor-in-Interest, Jessica
Hopman, and JESSICA HOPMAN, an individual, allege as follows:

### JURISDICTIONAL ALLEGATIONS

1.      JESSICA HOPMAN brings this action on behalf of, and as Successor-in-
Interest to, GERALD HOPMAN, pursuant to California <u>Code of Civil Procedure</u> § 377.30.

1

2. Plaintiff/Decedent, GERALD HOPMAN (hereinafter referred to as "Mr. HOPMAN") was an individual and was at all times mentioned in this Complaint a resident of the County of Los Angeles.

3. Plaintiff, JESSICA HOPMAN, is an individual and was at all times mentioned in this Complaint a resident of the County of Los Angeles.

4. The Plaintiffs are informed and believe that Defendant, SUNRISE VILLA CULVER CITY, is a residential care facility for the elderly ("RCFE", hereinafter the "RCFE FACILITY") in the County of Los Angeles located at 4061 Grand View Blvd., Los Angeles, CA 90066.

5. The Plaintiffs are informed and believe that Defendant, WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA CULVER CITY, is a limited liability company with its principal place of business located at 4500 Dorr Street, Toledo, OH 43615, and is and was at all times mentioned in this Complaint the licensee or co-licensee of SUNRISE VILLA CULVER CITY (hereinafter WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA CULVER CITY will be referred to as "WELLTOWER OPCO"), operating as a 24-hour residential care facility for the elderly in the County of Los Angeles.

6. The Plaintiffs are informed and believe that Defendant, SUNRISE SENIOR LIVING MANAGEMENT, INC. (hereinafter referred to as "SUNRISE SENIOR LIVING"), is a corporation with its principal place of business located at 7902 Westpark Drive, McLean, VA 22102. Plaintiffs are informed and believe that SUNRISE SENIOR LIVING was at all times mentioned in this Complaint the owner, operator, licensee, co-licensee, management company, consulting company, manager, and/or alter-egos of SUNRISE VILLA CULVER CITY, responsible for the business and clinical management of SUNRISE VILLA CULVER CITY, and actively participated in and controlled the business SUNRISE VILLA CULVER CITY, which ultimately affected the care provided to Mr. HOPMAN.

7. The Plaintiffs are informed and believe that specifically, SUNRISE SENIOR LIVING was responsible for the operations management of SUNRISE VILLA CULVER CITY and WELLTOWER OPCO, assisted SUNRISE VILLA CULVER CITY and

2

1  WELLTOWER OPCO in establishing a capital expenditure plan, was responsible for advising

2  the Executive Director/ Administrator the overall management of the facility to assure quality

3  services were being provided to its residents. Defendant, SUNRISE SENIOR LIVING was

4  further responsible for ensuring that all staff at SUNRISE VILLA CULVER CITY were

5  properly trained in patient care to assure the facility is in compliance with all regulatory

6  agencies and therefore is vicariously liable for all acts and omissions of the employees of

7  SUNRISE SENIOR LIVING, SUNRISE VILLA CULVER CITY and WELLTOWER

8  OPCO.

9      8.      The Plaintiffs are informed and believe that Defendant, SHANE FOWLER, is

10 an individual and at all relevant times mentioned in this Complaint was a resident in the

11 County of Los Angeles, State of California. Plaintiffs are informed and believe that SHANE

12 FOWLER was at all relevant times mentioned in this Complaint the Executive Director at

13 SUNRISE VILLA CULVER CITY, who is responsible for the day to day operations of

14 SUNRISE VILLA CULVER CITY.

15     9.      The Plaintiffs are informed and believe and on that information and belief

16 alleges that DOE Defendants 1 through 10, inclusive, were the owners, operators,

17 administrators, licensee, management and consulting companies, and supervisors of

18 SUNRISE VILLA CULVER CITY, and these individuals or entities each ratified, authorized

19 and/or directed the conduct as hereinafter described and alleged at SUNRISE VILLA

20 CULVER CITY, and its respective agents and employees, and are therefore vicariously liable

21 for the acts and omissions of these co-Defendants their agents and employees.

22     10.     At all times mentioned herein, DOE Defendants 11 through 20, inclusive, were

23 the owners, members, officers, administrators, managers of WELLTOWER OPCO.

24     11.     At all times mentioned herein, DOE Defendants 21 through 30, inclusive, were

25 the owners, officers, administrators, shareholders, of SUNRISE SENIOR LIVING.

26     12.     The Plaintiffs are informed and believes that DOES 31 through 40, inclusive,

27 were the nurses, certified nursing assistants, caregivers, therapists, and other persons

28

3

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  employed by SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE

2  SENIOR LIVING, DOES 1-30, and/or SHANE FOWLER to provide care to its residents.

3        13.    The Plaintiffs are informed and believe that DOES 41 through 50, inclusive,

4  are those persons or entities whose conduct caused the injuries and damages alleged herein.

5        14.    Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO,

6  SUNRISE SENIOR LIVING, and DOES 1-30, were operating as a single unit and joint

7  enterprise in operating the RCFE, SUNRISE VILLA CULVER CITY, making Defendants

8  jointly and severally liable for the injuries suffered by Mr. HOPMAN.

9        15.    The Plaintiffs are ignorant of the true names of Defendants DOES 1 through

10  50, inclusive.  Plaintiffs sue those Defendants by such fictitious names pursuant to California

11  Code of Civil Procedure § 474.  Plaintiffs will seek leave of Court to amend this Complaint to

12  identify said Defendants when their identities are ascertained.  Plaintiffs are informed and

13  believe, and on that basis allege, that each of the fictitiously named Defendants was in some

14  fashion or manner liable and legally responsible for the damages and injuries set forth herein.

15  **GENERAL ALLEGATIONS**

16        16.    Mr. HOPMAN was born on September 26, 1931.

17        17.    At all relevant times, Mr. HOPMAN was 88 years old and was an "elder"

18  within the meaning of Welfare & Institutions Code § 15610.27.  While a resident at

19  SUNRISE VILLA CULVER CITY, Mr. HOPMAN at all times required assistance with his

20  medications and his Activities of Daily Living ("ADL's") including, but not limited to,

21  toileting, bathing, dressing, personal hygiene.

22        18.    At all times relevant to this action, Defendants, SUNRISE VILLA CULVER

23  CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES

24  1 through 50, were, at the time of the wrongful and abusive acts hereinafter alleged, acting as

25  "care custodians" or had "care or custody" of Mr. HOPMAN, as defined in California

26  Welfare & Institutions Code § 15610.17.  "Care custodian" means an administrator or an

27  employee of any public or private facilities or agencies, or persons providing care or services

28  for elders or dependent adults, including members of the support staff and maintenance staff

4

1  of twenty-four-hour assisted living facilities, such as SUNRISE VILLA CULVER CITY. Mr.

2  HOPMAN was totally dependent upon his "care custodians" for food, shelter, safety,

3  medication administration, physical hygiene, and assistance with his ADL's.

4        19.    At all relevant times, Defendants, and each of them, were the knowing agents

5  and/or alter-egos of one another, and that the Defendant's officers, directors, and managing

6  agents directed, approved, and/or ratified all of the acts and omissions of each of the other

7  Defendants, their agents and employees thereby making each Defendant vicariously liable for

8  the acts and omissions of their co-Defendants, their agents and employees, as is more fully

9  alleged herein.

10       20.    Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO,

11  SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50, owed a duty to Mr.

12  HOPMAN to provide him with continuous care and supervision in compliance with

13  applicable federal, state regulations, and codes.

14       21.    At all times, Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER

15  OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50, each owed a duty

16  to the Plaintiff, Mr. HOPMAN, yet failed to operate and provide services in compliance with

17  applicable federal regulations, state regulations, and codes, and with accepted standards and

18  principles that apply to those providing services in such a facility as required by Title 22

19  California Code of Regulations § 87100, et seq.

20       22.    While a resident at SUNRISE VILLA CULVER CITY, it is the Plaintiffs'

21  contention that Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO,

22  SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50, so neglected, abandoned

23  his care, failed to protect him from health hazards, failed to provide care for his physical

24  health needs, failed to exercise the degree of care that a reasonable person in a like position

25  would exercise, all such acts constituting reckless "neglect" as defined in Welfare and

26  Institutions Code § 15610.57 and delineated in Delaney v. Baker (1999) 20 Cal.4th 23, 31-32,

27  35, such that Defendants forced Mr. HOPMAN to move from a single apartment in the

28  assisted living unit of SUNRISE VILLA CULVER CITY into the memory care unit at

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   Defendants' facility where residents were infected with the novel coronavirus ("COVID-19").

2   Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR

3   LIVING, SHANE FOWLER, and DOES 1-50, recklessly placed Mr. HOPMAN in danger of

4   contracting COVID-19 knowing that no precautions were being taken in the memory care unit

5   to minimize the spread of COVID-19. Defendants further failed to treat Mr. HOPMAN's

6   COVID-19 infection, failed to report his change of condition to his physician, and failed to

7   timely transfer him to an acute health care facility when he began exhibiting signs of COVID-

8   19, which led to his death on May 12, 2020.

9        23.     SUNRISE VILLA CULVER CITY consists of two living units: 1) an assisted

10   living unit comprising of single apartments for independent residents who need supportive

11   care, and 2) the Terrace Club Neighborhood ("Terrace Club"), a close-quartered memory care

12   unit comprising of a community of residents who are living with early to moderate stages of

13   memory loss and require more structure and daily care. Mr. HOPMAN desired to live in the

14   assisted living unit of SUNRISE VILLA CULVER CITY.

15        24.     Prior to admitting Mr. HOPMAN into the assisted living unit of SUNRISE

16   VILLA CULVER CITY, Mr. HOPMAN's family toured the facility and met with

17   Defendants' staff. At the time, Mr. HOPMAN and his family raised concerns to Defendants'

18   staff whether Defendants would be able to properly monitor him and assist him in the assisted

19   living unit. Defendants' staff assured Mr. HOPMAN and his family that they could provide

20   him with care and supervision in the assisted living unit of SUNRISE VILLA CULVER

21   CITY.

22        25.     Prior to accepting Mr. HOPMAN into SUNRISE VILLA CULVER CITY,

23   Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR

24   LIVING, SHANE FOWLER, and DOES 1-50 evaluated Mr. HOPMAN and determined they

25   were able to meet his needs in the assisted living unit of SUNRISE VILLA CULVER CITY.

26        26.     Mr. HOPMAN, through his daughter and responsible party, Jessica Hopman

27   ("Jessica"), and Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO,

28   SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50, executed a Residency

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  Agreement whereby Defendants promised and contracted with Mr. HOPMAN to provide him

2  with lodging in the assisted living unit of SUNRISE VILLA CULVER CITY, three meals a

3  day, assistance with Activities of Daily Living ("ADL's"), frequent observation of him and

4  his health status in order to respond to his health needs, and Assisted Living Services – for a

5  one-time community fee of $3,000 plus a monthly rate of approximately $4,150 in accordance

6  with the Assisted Living Services. The Residency Agreement required Defendants, SUNRISE

7  VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE

8  FOWLER, and DOES 1-50, to provide Mr. HOPMAN with frequent monitoring, assistance

9  with dressing, bathing, personal hygiene, and ambulating about the facility. The Residency

10  Agreement also required that Jessica receive a 30-day written notice from Defendants if they

11  determined that they needed to substitute Mr. HOPMAN's apartment for another, or if he

12  required to be moved to a different unit. Attached and marked as Exhibit "1" is a true and

13  correct copy of the Residency Agreement between Plaintiff and Defendants.

14       27.    Based upon Mr. HOPMAN's evaluation and the Residency Agreement,

15  Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR

16  LIVING, SHANE FOWLER, and DOES 1-50 admitted Mr. HOPMAN into a 1-bedroom

17  apartment in the assisted living unit of SUNRISE VILLA CULVER CITY. Defendants knew

18  that Mr. HOPMAN required daily assistance and assured Mr. HOPMAN and his family that

19  Mr. HOPMAN could be cared for and properly assisted as a resident in the assisted living

20  unit.

21       28.    On September 2, 2018, Mr. HOPMAN was admitted into his 1-bedroom

22  apartment in the assisted living unit of SUNRISE VILLA CULVER CITY. For nearly a year,

23  Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR

24  LIVING, SHANE FOWLER, and DOES 1-50 were able to properly care for and assist Mr.

25  HOPMAN while he lived independently in his 1-bedroom apartment in the assisted living

26  unit. During this time, an outside caregiver, Emma Deiner ("Emma"), visited him twice a

27  week to provide care and companionship.

28       29.    On or about August 2019, Mr. HOPMAN experienced a decrease in care and

7

1  assistance from Defendants' staff. Though his health remained stable and he remained

2  independent, Mr. HOPMAN required more care from outside caregivers as it became

3  apparent that Defendants' staff was not providing adequate care and assistance. At the time, it

4  also became difficult for Mr. HOPMAN's family to transport him from SUNRISE VILLA

5  CULVER CITY to his medical appointments. Because SUNRISE VILLA CULVER CITY

6  was understaffed and no longer provided an adequate level of care and assistance,

7  Defendants' staff recommended that Mr. HOPMAN be placed on hospice so that hospice

8  caregivers and physicians would visit Mr. HOPMAN at his assisted living apartment even

9  though he did not have a prognosis of six months or less to live.

10         30.    Not knowing that hospice was for those patients who had less than six months

11 to live, upon that recommendation, Mr. HOPMAN's family hired Pacific Hospice Care, who

12 was the agency recommended by Defendants. Hospice nurses and caretakers visited Mr.

13 HOPMAN three times a week in the assisted living unit in combination with visits from a

14 hospice physician. At the time, Defendants began placing responsibility for Mr. HOPMAN's

15 care and assistance on hospice and private caregivers while continuing to assure Mr.

16 HOPMAN and his family that Defendants' staff could properly care for and assist Mr.

17 HOPMAN in the assisted living.

18         31.    On or about January 7, 2020, Mr. HOPMAN's eyesight and mobility

19 deteriorated. Though Mr. HOPMAN remained independent, Defendants' staff suggested to

20 Mr. HOPMAN and his family that Mr. HOPMAN might require a greater level of care and

21 that Mr. HOPMAN and his family should tour Terrace Club, the memory care unit of

22 SUNRISE VILLA CULVER CITY, where Mr. HOPMAN could be cared for and monitored

23 more frequently.

24         32.    On or about February 19, 2020, Jessica met with Letty, a caregiver employed

25 by SUNRISE VILLA CULVER CITY, who gave Jessica a tour of Terrace Club and showed

26 Jessica an empty room near the entrance where Mr. HOPMAN would reside alone. On

27 February 20, 2020, Jessica spoke with the Executive Director of SUNRISE VILLA CULVER

28 CITY, Defendant, SHANE FOWLER, who informed her that the only rooms available in

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  Terrace Club were shared rooms. At the time, Jessica expressed to SHANE FOWLER that

2  Mr. HOPMAN might not like sharing a room and that it would be a big change for Mr.

3  HOPMAN to move to Terrace Club with a roommate. SHANE FOWLER insisted that it

4  could be a positive change for Mr. HOPMAN and that Mr. HOPMAN would have access to

5  the outdoor patio and be able to eat with other residents in the dining hall.

6      33.   On or about February 24, 2020, Defendants' staff began taking Mr. HOPMAN

7  from his apartment at the assisted living unit to Terrace Club to allow him to acclimate before

8  completing his potential move into a new room. For the next few weeks, Mr. HOPMAN spent

9  his mornings and afternoons at Terrace Club. Unfortunately, he was uncomfortable with his

10  daily surroundings in the memory care unit and wanted to remain living independently in the

11  assisted living unit.

12      34.   On March 10, 2020, Jessica expressed to Defendant, SHANE FOWLER that

13  Mr. HOPMAN was not comfortable with Terrace Club and that he would not like to move

14  into a shared room with another roommate. At that time, it was agreed upon between Jessica

15  and SHANE FOWLER that Mr. HOPMAN would move into a smaller studio apartment in

16  the assisted living unit of SUNRISE VILLA CULVER CITY in order to conserve money for

17  Mr. HOPMAN's long term care and so that Mr. HOPMAN could remain living

18  independently. At the time, SHANE FOWLER and Defendants' staff assured Mr. HOPMAN

19  and his family that Defendants' staff could continue to properly care for and assist Mr.

20  HOPMAN as he lived independently in his new studio apartment in the assisted living unit.

21      35.   On March 13, 2020, Mr. HOPMAN moved into his new studio apartment in

22  the assisted living unit of SUNRISE VALLY CULVER CITY. Defendants' staff continued to

23  provide care and assistance to Mr. HOPMAN in his new apartment without issue. Hospice

24  and private caregivers continued to regularly visit Mr. HOPMAN in his new studio apartment

25  in the assisted living unit.

26      36.   On March 16, 2020, due to the spread of the COVID-19 pandemic, Defendant,

27  SHANE FOWLER sent a letter to Mr. HOPMAN and his family assuring them that

28  Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR

1   LIVING, SHANE FOWLER, and DOES 1-50 were taking precautions to prevent contraction

2   and the spread of COVID-19 at the facility. Defendants began a lockdown of SUNRISE

3   VILLA CULVER CITY and restricted visitors to the facility to essential visitors only. This

4   requirement restricted Mr. HOPMAN's family, private caregivers, and hospice nurses,

5   hospice caregivers and physician from visiting him at his studio apartment because he was an

6   independent resident who was not terminally ill with six months or less to live. At this time,

7   residents were also isolated in their apartments or rooms and were provided meals in-room.

8         37.    Jessica became concerned that due to the lockdown caused by the COVID-19

9   pandemic, Mr. HOPMAN would not receive the care, assistance, and attention he needed. On

10   March 17, 2020, SHANE FOWLER contacted Jessica and assured her that Mr. HOPMAN

11   was doing fine, that he was in good spirits, and that there would be no issue with Defendants'

12   staff continuing to properly care for and assist Mr. HOPMAN while he was isolated in his

13   studio apartment in the assisted living unit.

14         38.    On March 18, 2020, Defendant, SHANE FOWLER contacted Jessica and

15   informed her that Mr. HOPMAN was doing fine and eating. Again, on March 24, 2020,

16   SHANE FOWLER contacted Jessica to inform her that Mr. HOPMAN was doing fine. Upon

17   Jessica's request to visit Mr. HOPMAN at his studio apartment, SHANE FOWLER declined

18   her request, assured her that her father was doing fine, and merely arranged a FaceTime call

19   between Jessica and Mr. HOPMAN instead of allowing Jessica to enter the facility.

20         39.    On March 30, 2020, Jessica contacted Defendant, SHANE FOWLER and

21   asked about Mr. HOPMAN's status as she had heard there were cases of residents who had

22   contracted COVID-19 at SUNRISE VILLA CULVER CITY. SHANE FOWLER assured

23   Jessica that there were no cases of residents contracting COVID-19, that Mr. HOPMAN was

24   fine and had no symptoms of the virus, and that the facility was "in a good position right now

25   as a whole" since the residents were isolated in their apartments.

26         40.    Later, on April 3, 2020, Defendant, SHANE FOWLER notified Jessica that all

27   residents at SUNRISE VILLA CULVER CITY were required to stay in their rooms at all

28   times. SHANE FOWLER assured Jessica that he and Defendants' staff were formulating a

1    plan to continue to care for the residents at SUNRISE VILLA CULVER CITY while they

2    remain isolated.

3        41.     On April 16, 2020, Jessica learned that Defendants, SUNRISE VILLA

4    CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER,

5    and DOES 1-50, had moved her father into a room at Terrace Club without notice or her or

6    Mr. HOPMAN's consent. Nor did Defendants provide Jessica or Mr. HOPMAN with the

7    required 30-day written notice. Defendants, SUNRISE VILLA CULVER CITY,

8    WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50,

9    took Mr. HOPMAN out for a walk and had all his furniture and belongings moved to a shared

10    room at Terrace Club.

11        42.     Immediately, Jessica expressed her concern to SHANE FOWLER and

12    informed him that she was worried about moving Mr. HOPMAN to Terrace Club since he had

13    declined to do so only weeks previously. Jessica was also concerned about Mr. HOPMAN's

14    move due to the potential spread of COVID-19 at Terrace Club since Terrace club was a

15    community of commingled residents. Prior to his move, Mr. HOPMAN was isolated at his

16    studio apartment, was independent, was in generally stable condition, and was not exposed to

17    residents and a higher number of Defendant's staff who could be infected with COVID-19.

18        43.     On April 18, 2020, Defendants allowed Jessica to visit Mr. HOPMAN at

19    SUNRISE VILLA CULVER CITY. When Jessica arrived at the facility, she noticed the

20    common areas at the assisted living unit were empty as residents were confined to their rooms

21    and any gathering in the common areas was not permitted. However, when Jessica visited Mr.

22    HOPMAN at Terrace Club, she noticed that Defendants' staff and the residents were

23    wandering the halls and common areas without masks and without making any attempts to

24    socially distance. The doors of the residents' rooms were left wide open. While Jessica visited

25    Mr. HOPMAN in his room at Terrace Club, another resident randomly walked into Mr.

26    HOPMAN's room to carry on a conversation. Jessica noted that it was very strange that

27    proper precautions were taken to stop the spread of COVID-19 at the assisted living unit but

28    that Defendants' staff made very little effort to stop the spread of COVID-19 at Terrace Club.

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  Defendants did not take the precautions to prevent the spread of COVID-19 in Terrace Club

2  as promised and assured by Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER

3  OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50. Jessica was later

4  informed by SHANE FOWLER that because of the mental conditions of the residents in

5  Terrace Club, Defendants were not allowed to confine these residents to their rooms and that

6  most illnesses spread through Terrace Club for this reason. Therefore, Defendants, SUNRISE

7  VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE

8  FOWLER, and DOES 1-50, knew before moving Mr. HOPMAN into Terrace Club, that he

9  would be at higher risk for contracting COVID-19 because they were not able to put safety

10  precautions in place in Terrace Club.

11       44.    On April 24, 2020, Jessica received a phone call from Defendants' staff

12  informing her that a resident from Terrace Club of SUNRISE VILLA CULVER CITY had

13  contracted COVID-19. The same day, Defendant, SHANE FOWLER sent a letter to the

14  families of the residents informing them that Defendants planned on testing residents for

15  COVID-19 but did not mention that a resident had contracted COVID-19. SHANE FOWLER

16  insisted that Defendants were continuing their infection control protocols through the entire

17  community including in-room dining, one-to-one resident engagement, and supporting all

18  residents as they remain in their rooms.

19       45.    On April 25, 2020, SHANE FOWLER sent a letter to the families of the

20  residents indicating that Defendants were attempting to send out mobile testing for COVID-

21  19. Also, on April 25, 2020, SHANE FOWLER sent another letter to the families of residents

22  indicating for the first time that a resident had contracted COVID-19 at SUNRISE VILLA

23  CULVER CITY. SHANE FOWLER assured all families that proper infection control

24  protocols were taking place including: conducting symptom checks on residents twice a day,

25  promoting social distancing, asking residents to remain in their rooms and limiting time in

26  common areas, and serving all meals in-room. At this time, Jessica became very alarmed for

27  Mr. HOPMAN's wellbeing given the lack of precautions she had witnessed being taken at

28  Terrace Club to stop the spread of COVID-19. She sent a text message to SHANE FOWLER

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1    expressing her concerns. Later, SHANE FOWLER called Jessica and informed her that there
2    were two residents who had contracted COVID-19 at that time.

3         46.    On April 30, 2020, Mr. HOPMAN and the other residents in Terrace Club
4    were tested for COVID-19. Over the next several days, Mr. HOPMAN stopped eating and
5    continued to have gastrointestinal issues. Jessica noticed that he was losing weight, he was
6    struggling to speak, had a cough, and his condition was rapidly deteriorating. Defendants'
7    staff failed to recognize this change of condition and notify Mr. HOPMAN's physician of this
8    change of condition. Defendants' staff further failed to transfer Mr. HOPMAN to an acute
9    health care facility when he began to stop eating, continued to have gastrointestinal issues,
10   lost weight, stopped speaking, had a cough, and exhibited a noticeable change of condition.
11   Defendants suspected or should have suspected that Mr. HOPMAN was infected with
12   COVID-19 or was suffering from another serious illness. Jessica asked for Mr. HOPMAN's
13   hospice caregiver, Angie, to visit Mr. HOPMAN, but Defendants' refused her entrance into
14   the facility. Mr. HOPMAN's physician was also restricted from the facility and could not
15   accurately assess him by physical examination.

16        47.    On May 4, 2020, Mr. HOPMAN and his family were informed that his test
17   came back positive for COVID-19. Mr. HOPMAN, his roommate, six (6) other residents, as
18   well as nine (9) caregivers all tested positive for COVID-19 on the same day. All those
19   infected by COVID-19 at SUNRISE VILLA CULVER CITY resided or cared for residents in
20   Terrace Club.

21        48.    For the next week after testing positive for COVID-19, Mr. HOPMAN's
22   condition continued to deteriorate. Defendants' staff failed to regularly communicate with Mr.
23   HOPMAN's family and inform them of his ongoing condition as they remained restricted
24   from entering the facility and seeing their father. Mr. HOPMAN's private caregivers
25   continued to be restricted by Defendants from physically entering and caring for him at the
26   facility. Starting May 6, 2020, Mr. HOPMAN's hospice caregiver, Angie, was allowed to visit
27   one time per week because the facility was understaffed. At the same time, Jessica
28   continuously complained to Defendant, SHANE FOWLER that Terrace Club was

13

1   understaffed and that Defendants' staff failed to regularly care for and treat Mr. HOPMAN.

2       49.    Defendants further failed to have Mr. HOPMAN's medical condition

3   accurately assessed by a physician or require his transfer to an acute health care facility.

4   Between to his COVID-19 infection, change of condition when he stopped eating, had

5   gastrointestinal issues, lost weight, struggled to speak, and began having a cough, Defendants

6   should have identified that Mr. HOPMAN's health condition required a greater level of care.

7   Instead, Defendants let Mr. HOPMAN's COVID-19 infection and change of condition go

8   untreated as his hospice and private caregivers remained restricted and the facility continued

9   to be understaffed.

10       50.    On May 10, 2020, Defendants allowed Angie to visit Mr. HOPMAN. On the

11   same day, because Defendants' facility continued to be understaffed, Jessica hired Vitas

12   Hospice. Defendant, SHANE FOWLER informed Jessica that Vitas Hospice caregivers

13   would have less restrictions to the facility and could provide Mr. HOPMAN with more

14   frequent care as his health continued to deteriorate.

15       51.    On May 11, 2020, Jessica met with a representative from Vitas Hospice in

16   parking lot of SUNRISE VILLA CULVER CITY to make arrangements for Mr. HOPMAN's

17   hospice services. However, Defendants would not arrange with Vitas Hospice caregivers to

18   meet with Mr. HOPMAN inside the facility. Instead, Mr. HOPMAN remained alone, isolated,

19   and untreated in his room. Jessica pleaded with Defendant, SHANE FOWLER for

20   Defendants' staff to meet with Mr. HOPMAN or to allow caregivers to visit so that he would

21   not have to die alone.

22       52.    However, on May 12, 2020, Mr. HOPMAN passed away from complications

23   due to COVID-19. In total, four (4) residents from Terrace Club at SUNRISE VILLA

24   CULVER CITY contracted and passed away from COVID-19, including Mr. HOPMAN's

25   roommate.

26       53.    Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO,

27   SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50 failed to perform their

28   obligations as required by the Residency Agreement and failed to exercise the degree of care

14

1   that a reasonable person in a like position would exercise. Mr. HOPMAN remained safe and

2   isolated from COVID-19 while he resided alone in his studio apartment in the assisted living

3   unit of SUNRISE VILLA CULVER CITY. Defendants, SUNRISE VILLA CULVER CITY,

4   WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50

5   forced Mr. HOPMAN to move to Terrace Club without first giving 30-day written notice to

6   Jessica, receiving her permission, or allowing her to find an alternative facility where Mr.

7   HOPMAN could live isolated from residents infected with COVID-19. Defendants never

8   indicated to Mr. HOPMAN or his family why in the midst of the worldwide COVID-19

9   pandemic it was prudent to move him from safe harbor in his isolated room and place him in a

10   community setting at Terrace Club where very little precautions were taken to eliminate the

11   spread of any communicable illnesses. Defendants never made any indication and provided no

12   explanation as to why they could not continue to care and assist Mr. HOPMAN in his studio

13   apartment in the assisted living unit. Instead, up until the day Defendants moved Mr.

14   HOPMAN to Terrace Club, they assured Mr. HOPMAN and his family that he would be

15   properly cared for and monitored in his studio apartment at the assisted living unit.

16        54.   Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO,

17   SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50 failed to protect him from

18   health hazards and failed to provide care for his physical health needs by moving Mr.

19   HOPMAN from safe harbor in his isolated studio apartment to a new room at Terrace Club

20   where very little precautions were taken to slow or stop the spread of COVID-19. Defendants

21   merely indicated that Mr. HOPMAN had been "acting out" without any explanation of how

22   his behavior became too problematic to care for and assist him at his assisted living studio

23   apartment. In fact, Defendants caused Mr. HOPMAN's family much confusion and surprise

24   when they forced Mr. HOPMAN to move because Defendants had previously assured Mr.

25   HOPMAN's family that staff was properly caring for and assisting him while he remained

26   isolated at his studio apartment.

27        55.   Moreover, had Defendants' staff recognized Mr. HOPMAN's change of

28   condition when he stopped eating, continued to have gastrointestinal issues, lost weight,

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1    struggled to speak, and had a cough, reported this change of condition to his physician, or

2    timely transferred him to an acute health care facility when he began experiencing this change

3    of condition, Mr. HOPMAN could have been treated for his COVID-19 infection and given

4    the chance to recover. Instead, Defendants, SUNRISE VILLA CULVER CITY,

5    WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50

6    failed to protect him from health hazards, failed to provide care for his physical health needs,

7    and allowed him to go untreated until he died due to complications of COVID-19. Even after

8    Mr. HOPMAN tested positive for COVID-19, Defendants never adequately cared for him,

9    never treated his condition, and failed to transfer him to an acute health care facility where he

10   could be effectively treated for his COVID-19 infection.

11          56.     Ultimately, as a result of Defendants, SUNRISE VILLA CULVER CITY,

12   WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50's

13   failure to allow Mr. HOPMAN to remain isolated in his studio apartment and forcing him to

14   move to a room at Terrace Club, Mr. HOPMAN was unnecessarily exposed to COVID-19

15   and became infected. Defendants' failure to recognize or treat Mr. HOPMAN's change of

16   condition, failure to report this change of condition to his physician for an accurate physical

17   assessment, and failure to transfer him to an acute medical facility resulted in Mr. HOPMAN

18   going untreated while infected with COVID-19. Mr. HOPMAN's withholding of treatment

19   resulted in his untimely death.

20          57.     The injuries sustained by Mr. HOPMAN due to infection of COVID-19 while

21   under the care of Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO,

22   SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50, were entirely preventable

23   had Defendants kept him isolated in his studio apartment at the assisted living unit of

24   SUNRISE VILLA CULVER CITY and provided enough sufficiently trained staff at

25   SUNRISE VILLA CULVER CITY to provide him with the amount of care that State and

26   Federal regulations required. Defendants' failure to protect Mr. HOPMAN from known health

27   and safety hazards and provide care for his physical health needs is statutory neglect.

28

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**Ratification of Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50's Conduct**

58.     Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, and DOES 1-50 had within their power, ability, and discretion to mandate that their facility employ adequately trained staff to meet the needs of their residents, including the Plaintiff, yet Defendants intentionally and/or with conscious disregard failed to do so, which resulted in Mr. HOPMAN's injuries.

59.     The acts and omissions of Defendants were ratified by Defendants' managing agents. At all relevant times, the reference to "managing agent," for purposes of managing agent ratification is used as that term is defined in *California Approved Jury Instructions (CACI) 3102B*. Pursuant to *CACI 3102B*, "an employee is a 'managing agent' if he or she **exercises substantial independent authority and judgment in her or her corporate decision making so that her or her decisions ultimately determine corporate policy**."

60.     The managing agents of the Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50 include, but are not limited to, the Executive Director and Director of Nursing.

61.     SHANE FOWLER, as the Executive Director is at the apex of the facility's management hierarchy. The Executive Director acts on the facility's behalf in all licensing and regulatory matters and is responsible for the overall management of the facility. The Executive Director is given the necessary discretion and authority to carry out that responsibility.  The Executive Director's position has various duties and functions, which, by their very nature as well as the way in which those duties are performed, inextricably impact the day-to-day operations of the facility which thereby affects corporate policy.

62.     SHANE FOWLER, as the Executive Director is responsible for the management and administration of SUNRISE VILLA CULVER CITY.  The Executive Director's duties also include the responsibility to:

    a.  Administer the facility in accordance with Title 22 regulations;

    b.  Develop an administrative plans and procedures;

17

c.  Recruit, employ and train qualified staff, and terminate employment of staff who perform in an unsatisfactory manner;

d.  Develop or expand programs or services provided by the facility for its residents;

e.  Administer fiscal operations such as budget planning, accounting, and establishing rates for community services, and;

f.  Responsible for ensuring there are sufficient staff to meet the acuity needs of the residents.

63.   The Executive Director and Director of Nursing personally committed the neglect by moving Mr. HOPMAN into the Terrace Club memory care unit at SUNRISE VILLA CULVER CITY knowing that they were moving him out of isolation and unnecessarily exposing him to a community of commingled residents and staff where no precautions were taken to spread communicable illnesses, including COVID-19. Regulations required that Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50, contact Mr. HOPMAN's family prior to moving him from his isolated apartment, which Defendants failed to do.

64.   The Director of Nursing also committed the neglect of Mr. HOPMAN by failing to instruct her staff to provide care and treatment to Mr. HOPMAN when he stopped eating, continued to have gastrointestinal issues, struggled to speak, had a cough, and exhibited signs and symptoms of a change of condition. The Director of Nursing further failed to instruct her staff to transfer him to an acute health care facility. Even after Mr. HOPMAN tested positive for COVID-19, the Director of Nursing failed to instruct her staff to effectively care and treat Mr. HOPMAN or transfer him to an acute health care facility. The Director of Nursing also committed the neglect of Mr. HOPMAN and withheld medical care from him by failing to instruct her staff to notify his physician of his signs and symptoms of a change of condition so that an accurate physical assessment could be performed and new orders for treatment could be obtained.

18

65.     It is the Plaintiff's contention that at all times herein relevant, the Defendants, and each of them, conceived of and implemented a plan to wrongfully increase their business profits, at the expense of residents such as Mr. HOPMAN.  Integral to this plan was the custom and practice of the Defendants' staffing its facility with an insufficient number of care personnel, many of whom were not properly trained nor qualified to care for the elders whose lives were entrusted to them.  The understaffing and lack of training was designed so as to reduce labor costs and to increase profits and resulted in the physical abuse and neglect of many residents of the facility, and most specifically, Mr. HOPMAN.

66.     The deliberate under staffing and lack of training by Defendants SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1 through 50, was designed to reduce labor costs and to increase profits, and resulted in the neglect of Mr. HOPMAN.  This corporate policy to provide insufficient levels of staffing was developed and implemented with the conscious disregard for the health and safety of those who it was supposed to protect, including Mr. HOPMAN, who suffered and ultimately died as a direct consequence of the Defendants' proprietary interests.

### Liability of Defendant, SUNRISE SENIOR LIVING

67.     Plaintiffs are informed and believe and thereon allege that Defendant, SUNRISE SENIOR LIVING was the management company for Defendant, SUNRISE VILLA CULVER CITY during the relevant time period of Mr. HOPMAN's admission at the SUNRISE VILLA CULVER CITY and contracted with WELLTOWER OPCO to operate and manage SUNRISE VILLA CULVER CITY.

68.     Plaintiffs are informed and believe and thereon allege that Defendant, SUNRISE SENIOR LIVING had full management responsibility for the operation of SUNRISE VILLA CULVER CITY including, but not limited to:

a.      Supervision and hiring of all employees of SUNRISE VILLA CULVER CITY;

19

1          b.    Having full management responsibility for the operation SUNRISE

2                VILLA CULVER CITY to ensure that the standards of the residents are

3                maintained at least at prescribed levels of care;

4          c.    Complying with all statutes, rules and regulations of governmental

5                authorities applicable to the operation of SUNRISE VILLA CULVER

6                CITY;

7          d.    Providing supervision for and direction to the Executive Director of

8                SUNRISE VILLA CULVER CITY;

9          e.    Establishing staffing schedules and personnel policies and procedures;

10          f.    Providing training to the staff;

11          g.    Budgeting and accounting;

12          h.    Being in charge of the day-to-day operation, resident care and

13                maintenance of SUNRISE VILLA CULVER CITY.

14     69.    As the management company for SUNRISE VILLA CULVER CITY,

15 Defendant, SUNRISE SENIOR LIVING was responsible for hiring the caregivers and

16 nursing staff, and to ensure that it's caregivers and nursing staff are in compliance with

17 statutes and regulations for resident care, and to ensure that SUNRISE VILLA CULVER

18 CITY had sufficient staff in numbers and training, and qualifications to care for its residents,

19 including Mr. HOPMAN. As a management company, joint venture, and/or alter-ego of

20 SUNRISE VILLA CULVER CITY, Defendant, SUNRISE SENIOR LIVING, in their

21 operation and through the staff they hired, had a substantial caretaking or custodial

22 relationship with Mr. HOPMAN, with an ongoing responsibility for one or more of his basic

23 needs including, dressing, bathing, food, shelter, toileting, personal hygiene, and assistance

24 with his ADL's.

25     70.    As the entities responsible for hiring the caregivers and nursing staff in

26 conjunction with SUNRISE VILLA CULVER CITY, Defendant, SUNRISE SENIOR

27 LIVING is vicariously liable for the acts of its employees.

28

20

**Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, and DOES 1-30 Were in a Joint Venture to Operate the RCFE, SUNRISE VILLA CULVER CITY**

71.    Each of the members of a joint venture, and the joint venture itself, are responsible for the wrongful conduct of a member acting in furtherance of the venture. A joint venture exists if all of the following have been proved:

(1)    Two or more persons or business entities combine their property, skill, or knowledge with the intent to carry out a single business undertaking;

(2)    Each has an ownership interest in the business;

(3)    They have joint control over the business, even if they agree to delegate control; and

(4)    They agree to share the profits and losses of the business

72.    Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, and DOES 1-30 entered into a joint venture to carry out a single business undertaking of operating the RCFE under the name SUNRISE VILLA CULVER CITY.

73.    During the relevant time of Mr. HOPMAN's admission at the facility, Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, and DOES 1-30 maintained the care and custody of Mr. HOPMAN under the DSS license issued to WELLTOWER OPCO and SUNRISE SENIOR LIVING.

74.    It was agreed between the Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, and DOES 1-30 that WELLTOWER OPCO and SUNRISE SENIOR LIVING be the named co-licensees, and that SUNRISE SENIOR LIVING would manage and operate the facility in conjunction with WELLTOWER OPCO.

75.    Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, and DOES 1-30 shared in the profits. WELLTOWER OPCO received the profits from the residents, while SUNRISE SENIOR LIVING received a

21

1   percentage each month from the gross revenues of WELLTOWER OPCO as their

2   management fee. DOES 1-30, as the members, managers, and shareholders of SUNRISE

3   VILLA CULVER CITY, WELLTOWER OPCO, and SUNRISE SENIOR LIVING, received

4   the profits from each limited liability company and corporation.

5                      **FIRST CAUSE OF ACTION**

6          **Violation of Elder Abuse and Dependent Adult Civil Protection Act**

7                 **[Welfare & Institutions Code § 15600, et seq.]**

8              **(By Plaintiff, GERALD HOPMAN Against All Defendants)**

9          76.    Plaintiff refers to and incorporates paragraphs 16-75 against Defendants,

10   SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING,

11   SHANE FOWLER, and DOES 1 through 50 as though fully set forth fully herein.  Plaintiff

12   JESSICA HOPMAN brings this action solely in her capacity as Successor-in-Interest of her

13   deceased father, GERALD HOPMAN.

14          77.    Mr. HOPMAN, at all relevant times, was over the age of 65 and thus an

15   "elder" as that term is defined in Welfare & Institutions Code § 15610.27.

16          78.    Welfare & Institutions Code § 15610.07 specifically defines "abuse of an elder

17   and dependent adult" to mean either (a) physical abuse, neglect, financial abuse,

18   abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or

19   mental suffering, or (b) the deprivation by a care custodian of goods or services that are

20   necessary to avoid physical harm or mental suffering.

21          79.    Defendants' respective acts and omissions as alleged herein constitute neglect

22   as defined in Welfare & Institutions Code § 15610.57, done with malice, oppression, fraud,

23   and recklessness within the meaning of Welfare & Institutions Code § 15657.

24          80.    Welfare & Institutions Code § 15610.57(a) specifically defines "neglect" for

25   purposes of EADACPA as (1) negligent failure of any person having the care or custody of an

26   elder or a dependent adult to exercise that degree of care that a reasonable person in a like

27   position would exercise, or (2) the negligent failure of an elder or dependent adult to exercise

28   that degree of self care that a reasonable person in a like position would exercise.  As defined

in Delaney v. Baker (1999) 20 Cal.4th 23, 34, "neglect" includes, but is not limited to, all of the following: (a) Failure to assist in personal hygiene, or in the provision of food, clothing or shelter, (b) Failure to provide medical care for physical and mental health needs, (c) Failure to protect from health and safety hazards, (d) Failure to prevent dehydration and malnutrition.

81.     The elements of a claim for elder abuse/neglect, as set forth in the California Approved Jury Instructions (CACI) 3103 are:

(a)     That the Defendant had care or custody of the Plaintiff;

(b)     That the Plaintiff was 65 years of age or older or a dependent adult while he was in Defendant's care or custody

(c)     That Defendant failed to use the degree of care that a reasonable person in the same situation would have used in protecting Plaintiff from health and safety hazards.

(d)     That Plaintiff was harmed; and

(e)     That Defendant's conduct was a substantial factor in causing the Plaintiff's harm.

82.     Welfare & Institutions Code § 15657 further provides that Mr. HOPMAN may recover enhanced damages for elder abuse where it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in section 15610.63, neglect as defined in section 15610.57, or financial abuse as defined in section 15610.30, and that the Defendants, and each of them, have been guilty of recklessness in the commission of this abuse, in addition to all other remedies otherwise provided by law.

83.     While Mr. HOPMAN was a resident at SUNRISE VILLA CULVER CITY, the Defendants and each of them were responsible for his care and custody.  The Defendants therefore had a duty under federal and state regulations to provide for his care, comfort, and safety.

84.     While Mr. HOPMAN was a resident at SUNRISE VILLA CULVER CITY, Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, and DOES 1 through 50, were responsible for his care and custody.  The Defendants

23

1   therefore had a duty under federal and state regulations to provide his for care, comfort, and

2   safety. Without limiting the generality of the foregoing, said Defendants, and each of them

3   had a duty to:

4       a.  Ensure that there is adequate number of direct care staff to support each

5           resident's physical, social, emotional, safety and health care needs as

6           identified in his current appraisal in violation of the requirements set forth

7           in 22 C.C.R. §§ 87705(c)(4), 87411(a), and 87582(c)(3)(B);

8       b.  Ensure that residents are regularly observed for changes in physical,

9           mental, emotional and social functioning and that appropriate assistance is

10          provided when such observation reveals unmet needs set forth in 22 C.C.R.

11          § 87466;

12      c.  Provide care, supervision, and services that meet the resident's individual

13          needs and are delivered by staff sufficient in numbers, qualifications, and

14          competency to meet their needs in accordance with Health and Safety Code

15          § 1569.269(a)(6).

16      d.  Report changes of condition to Mr. HOPMAN's physician to include

17          injuries from falls and cognitive impairments so that appropriate orders and

18          interventions can be implemented pursuant to 22 C.C.R. § 87466;

19      e.  Regularly inform his family of activities related to his care or services

20          including ongoing evaluations, as appropriate to the resident's needs

21          pursuant to 22 C.C.R. § 87468(a)(8)

22      f.  Adequately train and supervise nursing staff to perform proper custodial

23          care pursuant to 22 C.C.R. § 87411(c);

24      g.  Conduct ongoing appraisals pursuant to 22 C.C.R. § 87463.

25      85.    All Defendants further owed a special duty of care to Mr. HOPMAN, who was

26  a person of advanced age and unable to care for himself independently during his admission at

27  the SUNRISE VILLA CULVER CITY facility. This affirmative duty required a

28  responsibility for a heightened degree of supervision and care with respect to individuals and

1  patients of advanced age and a dependent adult.  This would include the duty to adequately

2  care for Mr. HOPMAN, whose physical and mental state left him particularly vulnerable to

3  harm.

4      86.      Defendants breached the aforementioned duties to Mr. HOPMAN.  These

5  breaches were in reckless disregard for his safety and the probability that severe injury would

6  result from the Defendants' failure to carefully adhere to its duties.  Defendants knew or

7  should have known that there was a probability that injury would result from the failure to

8  adhere to these duties.

9      87.      In failing to exercise the degree of care necessary to prevent acts described

10  above, all Defendants, and each of them, caused Mr. HOPMAN to suffer the deprivation by a

11  care custodian of goods and services necessary to avoid physical harm and mental suffering in

12  violation of Welfare & Institutions Code § 15610.07(b).

13      88.      As a legal result of the acts and omissions alleged herein, Mr. HOPMAN

14  suffered damages including pain and suffering, and emotional harm.  Defendants' respective

15  acts and omissions as alleged herein constitute neglect as defined in Welfare & Institutions

16  Code § 15610.57, done with malice, oppression, fraud, and recklessness within the meaning

17  of Welfare & Institutions Code § 15657, and as such, Mr. HOPMAN, is entitled to recover

18  damages for his pre-death pain and suffering pursuant to Welfare & Institutions Code §

19  15657(b), an award of reasonable attorney's fees and costs pursuant to Welfare & Institutions

20  Code § 15657(a).

21      89.      As a result of the malice, oppression, and/or fraud herein alleged, Mr.

22  HOPMAN, is entitled, in addition to special and general damages, to an award of punitive

23  damages pursuant to Civil Code § 3294 and to treble punitive damages pursuant to Civil Code

24  § 3345.

25

26

27

28  ///

25

## SECOND CAUSE OF ACTION

### Negligence

**(By Plaintiff, GERALD HOPMAN Against All Defendants)**

90.     Plaintiff refers to and incorporates paragraphs 16-75 against Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1 through 50 as though fully set forth fully herein.  Plaintiff JESSICA HOPMAN brings this action solely in her capacity as Successor-in-Interest of her deceased father, GERALD HOPMAN.

91.     Because Mr. HOPMAN was in Defendants' care and custody as alleged above, Defendants, and each of them, had a duty under federal and state regulations (which are designed for the protection of persons like Mr. HOPMAN) to provide for his care, comfort, and safety.

92.     At all times herein mentioned, Defendants SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1 through 50 owed a duty of due care in the custody and care of an elder dependent adult, and the operation and management of their respective facilities, including a duty of due care to Mr. HOPMAN.  Such duty included, but was not limited to: the duty to operate and manage its respective facility in such a careful manner as to protect the physical safety and well-being of the persons entrusted to their care by properly overseeing residents; by exercising due care in hiring managers, physicians, and employees; by properly training and supervising staff responsible for medical care and treatment of such a patient; and by taking whatever special actions and precautions were required to maintain the safety of those persons under their care, such as Mr. HOPMAN.

93.     Defendants, and each of them, further owed a special duty of care to Mr. HOPMAN, who suffered from generalized weakness and decreased mobility, requiring extensive assistance with ADL's.  This would include the duty to adequately monitor and care for Mr. HOPMAN, whose elder and dependent state left him particularly vulnerable to harm.

26

94.    While under the care of Defendants SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, and DOES 1 through 50, their employees, and/or agents, negligently failed to monitor and care for Mr. HOPMAN, failed to continue to isolate Mr. HOPMAN and keep him safe from exposure to the COVID-19 virus, failed to notify the physician of his change on condition, and failed to seek medical attention for him in a timely manner knowing he had stopped eating and experienced a change of condition.

95.    At the time of Mr. HOPMAN's admission at SUNRISE VILLA CULVER CITY, there were statutory and regulatory duties imposed upon the Defendants as set forth above.

96.    In addition to the codes and regulations set forth above, Defendants SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1 through 50, and each of them, owed a duty to Mr. HOPMAN, yet failed to care for him in a manner and in an environment that promoted maintenance or enhancement of his quality of life, as required by 42 U.S.C. § 1396r(b)(1)(A), 42 C.F.R. 483.15 and 22 C.C.R. § 87200 et al. The environment the Defendants, and each of them provided, harmed rather than enhanced the Plaintiff's quality of life by abandoning the care of the Plaintiff.

97.    In particular, Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1 through 50, consciously disregarded their duty to provide care which met the legal standards for such care and failed to provide such care thereby subjecting the Plaintiff to the probability of serious injury. The Defendants without limiting the generality of the foregoing failed to:

        a.    Ensure that there is adequate number of direct care staff to support each resident's physical, social, emotional, safety and health care needs as identified in his current appraisal in violation of the requirements set forth in 22 C.C.R. §§ 87705(c)(4), 87411(a), and 87582(c)(3)(B);

27

     b.   Provide care, supervision, and services that meet the resident's individual needs and are delivered by staff sufficient in numbers, qualifications, and competency to meet their needs in accordance with Health and Safety Code § 1569.269(a)(6).

     c.   Ensure that residents are regularly observed for changes in physical, mental, emotional and social functioning and that appropriate assistance is provided when such observation reveals unmet needs set forth in 22 C.C.R. § 87466;

     d.   Report changes of condition to Mr. HOPMAN's physician to include injuries from falls and cognitive impairments so that appropriate orders and interventions can be implemented pursuant to 22 C.C.R. § 87466;

     e.   Regularly inform his family of activities related to his care or services including ongoing evaluations, as appropriate to the resident's needs pursuant to 22 C.C.R. § 87468(a)(8)

     f.   Adequately train and supervise nursing staff to perform proper custodial care pursuant to 22 C.C.R. § 87411(c);

     g.   Conduct ongoing appraisals pursuant to 22 C.C.R. § 87463.

98.    Mr. HOPMAN was a member of a group of persons the statutes and regulations are intended to protect. Defendants' respective conduct was in violation of those statutes and regulations, as set forth herein, and was the direct, actual, legal, and proximate cause of Mr. HOPMAN's injuries. Such conduct is therefore Negligent Per Se.

99.    In particular, Defendants, and each of them, failed in their duty to provide care which met the legal standards for such care, and continued to fail to provide such care knowing that they would subject the Plaintiff to the probability of serious injury.

100.    As a direct and proximate legal result of each Defendants' acts, omissions, or conduct, Mr. HOPMAN sustained and incurred losses, including medical expenses in an amount to be proven at trial in excess of the minimum jurisdictional limits of this court.

///

///

28

### THIRD CAUSE OF ACTION

**Breach of Contract**

**(Plaintiff, GERALD HOPMAN Against All Defendants)**

101.    Plaintiff refers to and incorporates paragraphs 16-75 against Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50 as though set forth fully herein. JESSICA HOPMAN brings this action solely in her capacity as Successor-in-Interest of her father, Plaintiff, GERALD HOPMAN.

102.    On September 2, 2018, Plaintiff, GERALD HOPMAN, through his daughter and responsible party, JESSICA HOPMAN, and Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1-50, entered into a written Residency Agreement wherein the Defendants were to provide 24-hour care to the Plaintiff in consideration for payment made by him and his family. Pursuant to the terms of the contract, the Defendants were to provide at a minimum: (1) room; (2) board; (3) assistance with ADL's including assistance with ambulation, dressing, bathing, and toileting; (4) recreational services; (5) medication services and monitoring; (6) care and assistance; and (7) Assisted Living Services. Defendants were also required to give 30-day written notice to Plaintiff, JESSICA HOPMAN if Defendants determined that they needed to substitute Plaintiff's apartment for another, or if he required to be moved to a different unit. Attached and marked as Exhibit "1" is a true and correct copy of the September 2, 2018 Residency Agreement, incorporated by reference as though set forth fully herein.

103.    Up to May 12, 2020, the Plaintiff and his family had performed all their duties and obligations in accordance with the Residency Agreement. Defendants, and each of them, breached the Residency Agreement with the Plaintiff by failing to give JESSICA HOPMAN 30-day written notice before moving Plaintiff from his isolated studio apartment to the Terrace Club memory care unit at SUNRISE VILLA CULVER CITY, failing to provide adequate care, assistance, and treatment of Plaintiff when he became infected with COVID-19 and exhibited a change of condition, failing to notify Plaintiff's physician of a change of

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  condition for purposes of a reappraisal, and failing to timely transfer Plaintiff to an acute

2  health care provide when he exhibited signs and symptoms of a change of condition requiring

3  greater care. Also, Defendants breached the Residency Agreement by not providing

4  continuous care as required by the Assisted Living Services, and failing to regularly assess his

5  medical conditions during his residency at SUNRISE VILLA CULVER CITY.

6       104.    Defendants breached the Residency Agreement by failing to thoroughly and

7  competently perform its obligations owed to Mr. HOPMAN under the agreement.  As a direct

8  and proximate result of Defendants' breach of its written agreements with Plaintiff, Mr.

9  HOPMAN has been damaged in an amount to be proven at the time of Trial for consequential

10  and incidental damages for medical services.

11  **FOURTH CAUSE OF ACTION**

12  **Willful Misconduct**

13  **(By Plaintiff, GERALD HOPMAN Against All Defendants)**

14       105.    The Plaintiffs refer to and incorporate paragraphs 16-106 and as though fully

15  set forth herein against Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER

16  OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1 through 50.

17       106.    Plaintiff, JESSICA HOPMAN brings this action solely in her capacity as

18  Successor-in-Interest of her deceased father, GERALD HOPMAN.

19       107.    Because Mr. HOPMAN was in Defendants, SUNRISE VILLA CULVER

20  CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES

21  1 through 50's care and custody as alleged above, Defendants, and each of them, had a duty

22  under federal and state regulations (which are designed for the protection of persons like Mr.

23  HOPMAN) to provide his care, comfort, and safety.

24       108.    At all times mentioned, Defendants, and each of them, knew that their failure

25  to provide care and treatment which complied with the standard of care with respect to the

26  care and treatment of Mr. HOPMAN (including the standard as expressed in federal and state

27  statutes and regulations governing the role of Defendants' respective facility) would, given his

28  age, physical and mental condition, and the high degree of dependence upon the Defendants,

30

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1    pose the probability that he would sustain serious physical and mental injuries.

2       109.    Notwithstanding the aforesaid knowledge, Defendants had a duty under federal

3    and state regulations to provide his for care, comfort, and safety. Defendants, SUNRISE

4    VILLA CULVER CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE

5    FOWLER, and DOES 1 through 50, and each of them, consciously disregarded their duty to

6    provide care which met the legal standards for such care and failed to provide such care

7    thereby subjecting Mr. HOPMAN to the probability of serious injury.  In particular and

8    without limiting the generality of the foregoing, Defendants, SUNRISE VILLA CULVER

9    CITY, WELLTOWER OPCO, SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES

10    1 through 50 foregoing failed to:

11        a.    Ensure that there is adequate number of direct care staff to support each

12            resident's physical, social, emotional, safety and health care needs as identified

13            in his current appraisal in violation of the requirements set forth in 22 C.C.R.

14            §§ 87705(c)(4), 87411(a), and 87582(c)(3)(B);

15        b.    Provide care, supervision, and services that meet the resident's individual

16            needs and are delivered by staff sufficient in numbers, qualifications, and

17            competency to meet their needs in accordance with Health and Safety Code §

18            1569.269(a)(6).

19        c.    Ensure that residents are regularly observed for changes in physical, mental,

20            emotional and social functioning and that appropriate assistance is provided

21            when such observation reveals unmet needs set forth in 22 C.C.R. § 87466;

22        d.    Report changes of condition to Mr. HOPMAN's physician to include injuries

23            from falls and cognitive impairments so that appropriate orders and

24            interventions can be implemented pursuant to 22 C.C.R. § 87466;

25        e.    Regularly inform his family of activities related to his care or services

26            including ongoing evaluations, as appropriate to the resident's needs pursuant

27            to 22 C.C.R. § 87468(a)(8)

28

31

1     f. Adequately train and supervise nursing staff to perform proper custodial care

2       pursuant to 22 C.C.R. § 87411(c);

3     g. Conduct ongoing appraisals pursuant to 22 C.C.R. § 87463.

4   110. In committing the wrongful and abusive acts alleged above, each Defendant

5 breached the foregoing duties to Mr. HOPMAN. These breaches were intentional and in

6 reckless disregard of the probability that severe injury would result from this failure to

7 carefully adhere to such duties. Defendants, and each of them, knew or should have known

8 that there was a probability that injury would result from the failure to adhere to such duties.

9   111. At all relevant times, Defendants, and each of them, knew of the need for these

10 regulations and laws, knew that the lives and health of their residents were at risk whenever

11 they failed to meet such duties, and knew that the failure to comply with such duties would

12 result in injuries to their residents, including Mr. HOPMAN. In breaching these duties,

13 Defendants, and each of them, acted intentionally in conscious failure to avoid the perils to

14 Mr. HOPMAN, Defendants, and each of them, failed to devote their resources to the care and

15 treatment of residents like Mr. HOPMAN.

16   112. These wrongful acts were committed with recklessness, oppression, fraud, and

17 malice, and Plaintiffs request appropriate award of punitive damages against each Defendant.

18         **FIFTH CAUSE OF ACTION**

19        **Wrongful Death – C.C.P. § 377.60**

20   **(By Plaintiff JESSIA HOPMAN, an individual, Against All Defendants)**

21   113. Plaintiffs refer to and incorporate paragraphs 16-75 as though fully set forth

22 herein against Defendants, SUNRISE VILLA CULVER CITY, WELLTOWER OPCO,

23 SUNRISE SENIOR LIVING, SHANE FOWLER, and DOES 1 through 50. Plaintiff

24 JESSICA HOPMAN brings this cause of action under California Code of Civil Procedure §

25 377.60.

26   114. As a proximate result of the conduct of Defendants as alleged in paragraphs

27 16-75, Mr. HOPMAN died on May 12, 2020 from complications of the COVID-19 virus

28 infection.

32

1    115.    Mr. HOPMAN was the father to JESSICA HOPMAN.  Prior to Mr.

2    HOPMAN's death, JESSICA HOPMAN was dependent upon her father for love, care,

3    comfort, emotional support, society, and guidance. Mr. HOPMAN was a loving and dutiful

4    father to Plaintiff, JESSICA HOPMAN.

5    116.    As a proximate result of the respective conduct of Defendants, and the death of

6    Mr. HOPMAN, Plaintiff,  JESSICA HOPMAN has been deprived of the society, comfort,

7    attention, services and emotional support of Mr. HOPMAN, in a sum according to proof at

8    trial.

9

10    **WHEREFORE**, Plaintiffs demand a jury trial and pray for the following against

11    Defendants, and each of them:

12    **On the First Cause of Action (Elder Abuse)**

13    1.    For general damages according to proof.

14    2.    For special damages according to proof.

15    3.    For punitive/exemplary damages pursuant to California Welfare & Institutions

16    Code § 15657, *et seq.* and Covenant Care v. Superior Court (Inclan) (2004) 32 Cal.4th 771.

17    Plaintiff is entitled pursuant to statute and the California Supreme Court case of Covenant

18    Care, *supra*, to set forth and plead punitive damages as enhanced and heightened remedies

19    pursuant to Welfare & Institutions Code §15657 and is not required, pursuant to C.C.P. §

20    425.13 to seek judicial relief on punitive damages which attach to an Elder Abuse cause of

21    action set forth and discussed in detail in the California Supreme Court case of Covenant

22    Care, *supra*.

23    4.    For reasonable attorney' fees and costs of suit which must be awarded pursuant

24    to Welfare & Institutions Code §15657(a) should the Plaintiff meet and sustain their burden of

25    proof as to cause of action No. 1.

26    **On the Second Cause of Action (Negligence)**

27    5.    For general damages according to proof.

28    6.    For special damages according to proof.

33

1    **On the Third Cause of Action (Breach of Contract)**

2        7.      For special damages according to proof.

3    **On the Fourth Cause of Action (Willful Misconduct)**

4        8.      For special damages according to proof.

5        9.      For punitive damages.

6    **On the Fifth Cause of Action (Wrongful Death)**

7        10.     For special damages according to proof.

8    **As to All Causes of Action**

9        11.     For costs and interest in an amount to be proven at trial.

10       12.     For such other and further relief as the court may deem just and proper.

11

12   DATED: July 7, 2020                    MORAN LAW

13

14

15                                          Michael R. Moran
                                            Lisa Trinh Flint
16                                          Attorneys for Plaintiffs, GERALD
                                            HOPMAN, in and through his Successor-in-
17                                          Interest, Jessica Hopman, and JESSICA
                                            HOPMAN, an individual
18

19

20

21

22

23

24

25

26

27

28

                                    34

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

# EXHIBIT 1

# Residency Agreement
# GRANDVIEW SENIOR LIVING

4061 Grand View Boulevard
Los Angeles, CA 90066
(310) 390-0565
License No. 198602092

Selected Apartment Number  222

The parties to this Residency Agreement ("Agreement") are **Vintage Grandview, LLC**, acting through its manager, **Sunrise Senior Living Management, Inc. ("Sunrise")** and doing business as **Grandview Senior Living** ("Community" or "we"), and GERALD HOPMAN ("Resident(s)" or "you").

The Community is licensed by the California Department of Social Services as a Residential Care Facility for the Elderly and provides residency, care, and services, as needed, to its residents. The information that you and your health care professionals have provided us has been used to assist in the determination of proper admittance into the Community. The Community is not licensed for, and does not provide, medical or skilled nursing care. The Community is operated on a non-discriminatory basis and affords equal treatment and access to services to eligible persons regardless of sex, race, color, religion, national origin, marital status, registered domestic partner status, ancestry, actual or perceived sexual orientation, or actual or perceived gender identity.

This Agreement shall be effective as of the 2nd  day of SEPTEMEBER  20 18  and shall be in effect from month-to-month, unless and until it is terminated as set forth below.

Please note that as a Residential Care Facility for the Elderly, the Community is not permitted to use restraints on its residents, and the use of restraints is inconsistent with our philosophy. We encourage our residents to participate in physical activities to the extent of their capabilities. Thus, falls and other personal injuries may occur from time to time. If you are not comfortable with this type of environment, we suggest that you consider a higher level of care.

# ARTICLE I
## LIVING ACCOMMODATIONS

**A.**      *Apartment:* You may reside in your selected apartment on a month-to-month basis, subject to the terms of this Agreement, the general policies of the Community and the Addendum IV (Community Handbook), which may be amended from time to time at the sole discretion of the Community.

**B.**      *Furnishings:* You may furnish your apartment with your own furniture. You may also use your minor appliances and special equipment, provided that the Community's safety standards are met. You agree to allow the Community staff to inspect and approve appliances and/or furnishings to ensure that they do not pose a safety risk. If needed, the Community will provide basic furnishings for the apartment for the cost charged to the Community by a local furniture rental company as set forth in Addendum I (Our Rates).

You will be responsible for all charges incurred for rental of furniture and will be billed accordingly on your monthly statement for all furniture rentals. Basic furnishings include a twin-sized bed, nightstand, lamp, dresser and a chair.

**C.**      *Alterations and Maintenance:* You may not make structural or physical changes or alterations to your apartment without advance written approval. You agree to maintain your apartment in a clean, sanitary and orderly condition. The Community staff will provide general maintenance and repairs for the apartment. You are responsible for loss of or damage to the property of the Community, caused by you, your guests or invitees, excluding normal wear and tear.

**D.**      *Utilities.* Your apartment will be provided with water, heat, air conditioning and electricity, which are included in your Monthly Rate. You are responsible for charges incurred for installation and use of individual telephone services. If you do not have a telephone, local telephone service is available at the front desk without charge. Basic cable television may be included in your Monthly Rate (see Addendum I).

# ARTICLE II
## SERVICES

*Standard Services*: The Community will provide the following standard services which are included in your Monthly Rate unless otherwise specified:

**A.**      *Meals.* Three nutritious daily meals and between meal snacks. We will also provide some special diets, if prescribed by your physician as a medical necessity. Meals are served in the Community dining room.

       **1.**      *Tray Service.* You may, on an as-needed basis, request meal tray service during recovery from temporary illness or injury. Use of tray services may result in additional charges as set forth in Addendum I.

       **2.**      *Guest Meals.* You may invite guests to any meal. Please provide the Community with prior notice so that proper accommodations can be made. Guest meals will be billed to you as an extra charge, as set forth in Addendum I.

**B.**      *Laundry and Housekeeping.* Once per week, the Community will launder your linens and bath towels and provide a damp mopping of floors, bathroom cleaning (toilet, sink, tub and shower), trash removal, vacuuming and dusting of furniture. More frequent cleaning, linen and laundry services will be provided if needed or requested for additional fees as set forth in Addendum I.

C.     *Activity Programs*.  The Community offers a planned activity program including assistance with arrangements for utilization of local resources.  There may be extra charges for special events and/or activities.

D.     *Transportation*.  The Community will provide assistance in meeting medical and dental needs including planning, arranging and/or providing transportation to medical/dental appointments.  The Community has specific days for driving and a service area in which it provides complimentary transportation, as set forth in the Addendum IV (Community Handbook).  If your appointment does not correspond with the Community's driving days or service area, the Community will assist you in securing the additional services.   Special arrangements can be made for individual escorts and alternative transportation.  You will be responsible for any charges associated with the additional services or alternative transportation arrangements, as set forth in Addendum I.

E.     *Observation and Consultation*.  The Community staff will observe changes in the physical, mental, emotional and social well being of residents of the Community.  As conditions warrant, the Community will notify and provide information to you, your Responsible Person, family and/or health care professionals.

F.     *Emergency Response and Fire Protection*.  Your apartment will be equipped with an emergency call system, smoke detector and sprinkler system.  The call system is monitored 24 hours per day to alert staff to emergencies and illnesses.  In accordance with California law, there is on the premises and on duty at all times at least one staff member who is trained in CPR (cardiopulmonary resuscitation) and first aid.  You authorize us to obtain emergency health care services, at your expense, whenever, in the Community's sole discretion, such emergency services are deemed necessary.  We will notify your Responsible Party, if any, as soon as possible after such emergency where health care services have been provided.  Except with respect to residents who have a valid DNR (Do Not Resuscitate) order, appropriately trained staff will initiate CPR if, in their judgment, such intervention is appropriate.  Please notify us if you have an advance health care directive or POLST (physician orders for life-sustaining treatment) that contains information on your desires regarding life-sustaining treatment or intervention.

G.     *Assisted Living Services; Memory Care Neighborhood*.  The Community makes available several levels of Assisted Living Services.  Current rates for the various levels of Assisted Living Services are set forth in Addendum I.  These services include assistance with meeting resident needs, as well as assistance with activities of daily living, such as bathing, dressing, toileting, escorting, medication management and personal hygiene.  The Community also offers Standard Services to residents in our Memory Care Neighborhood, as set forth in Addendum I.  The pre-admission interview and assessment will initially determine the services needed.  We will evaluate your service needs by assessing your functional capabilities, physical status, mental condition, and social factors.  We will update your assessment annually or as necessary when there is a significant change in your condition or to keep the assessment accurate.

The Community will continue to monitor your needs and periodically reassess the services being provided.  Assessments will be documented in writing and available to you and your Responsible Person, if applicable.  Assessments may result in changes in the level of care that you receive, as well as the associated charges.  The current rates charged for Assisted Living Services and Standard Services in our Memory Care Neighborhood are set forth in Addendum I.  Your Current charges are set forth in Addendum II.

A resident who requires services must use those services offered by the Community as required by Community Care Licensing.  Services that are not provided by the Community should be contracted by Outside Service Providers.  You are responsible for any charges imposed by outside service providers.  You must comply with the Community's policies and rules for employment of outside service providers.  The services provided by outside sources must not conflict with the policies, procedures and regulations of the Community.  The Community will have the right to monitor and assess any and all levels of care.  If the services provided to the resident do not meet the Community's standards, we reserve the right to require other arrangements be made.

## ARTICLE III
## CHARGES AND FEES

    **A.**   *Monthly Rate.*  You will pay the Community a monthly rate ("Monthly Rate"), in advance, on or before the 1st day of the prior month throughout the term of this Agreement. The Monthly Rate will be deemed paid when received by the Community.  Payment will be made by personal check, money order, or other approved payment method and either mailed to the Community or deposited at the administrative office.

In addition to the Monthly Rate, you will be billed each month for any Optional Services you have requested and received (see Addendum I). Your monthly statement will include an itemization of any fees and charges that you have incurred.  If your account is not paid in full by the 1st day of the month in which it is due, the Community shall charge you a late payment fee of $150.00 and ten percent (10%) interest or the maximum legal rate on all delinquent amounts, beginning on the date they become delinquent.  Your right to occupy and use your apartment is contingent upon your timely payment of your total Monthly Rate and all other applicable charges and fees under this Agreement.

    **B.**   *Adjustments to Monthly Rate.*

        **1.**   *First month.*
If this Agreement becomes effective on a day other than the first day of the month, the total Monthly Rate will be prorated on a daily basis. The first month's payment or prorated portion thereof, is due at the time of move-in.

        **2.**   *Adjustments for Level of Care Change.*
Your monthly charges are subject to immediate increase if the amount or frequency of your services increases, as a result of a change in your level of care, or if you elect additional services. You will be notified in writing within two (2) business days of an increase that is based upon a change in your level of care.

Similarly, the amount due for your Optional Services is also subject to immediate increase if the amount or frequency of Optional Services you elect changes.

Changes to your charges will be prorated on a daily basis if the services are increased during the month. Thereafter, the new charges will be due, in advance, on the 1st day of the prior month.  Services provided to you are reviewed by Community staff on a monthly basis, or more frequently if there is a change in your condition. A change of condition may warrant an increase or decrease in service or may lead to a determination that the Community can no longer meet your needs.

        **3.**   *Adjustments to Our Rates and Fees.*
The Community may, at any time, increase its rates and/or fees, including all fees and rates set forth in Addendum I or in Addendum IV (Community Handbook).  Typically our annual increase is effective on January 1, however, we reserve the right to increase rates more than once per year.   If rates and/or fees are increased (for reasons *other than* for a change in services you receive as described in subsection 2 above), you and/or your Responsible Person will be given at least a sixty-day (60) written notice.  Increases to our rates will typically range between four percent (4%) and eight percent (8%), but may vary depending on economic conditions.  As our cost of food, utilities, staff wages and general operating costs increase annually,  rate increases are necessary to continue to provide a high quality product and service package to our residents.  Any notice of an increase to our rates will include the reasons for the increase and a general description of the additional costs that the Community has incurred that led to the increase.

    **C.**   *Community Fee.*   You  shall  pay  a  Community  Fee  in  the  amount  of THREE THOUSAND ____ dollars ($ 3000 ) upon your admission to the Community and, if applicable, a pet fee in the amount of N/A _____ dollars ($N/A ____ ). The Community Fee is used to help cover

the costs associated with processing paperwork, completing resident assessments and orientation of the resident to the Community, and to cover other costs associated with the operation of the Community including preparing your living accommodations for you. Prior to us assessing you and your move in to the Community, the Community Fee is entirely refundable. After we have assessed you, the first five hundred dollars ($500) of the Community Fee becomes non-refundable and the remainder (that is after deducting $500) is refundable as follows: eighty percent (80%) if you do not move into the Community for any reason after completion of the resident assessment; eighty percent (80%) if this Agreement terminates and you move out during your first (1st) month of occupancy at the Community; sixty percent (60%) if this Agreement terminates and you move out during your second (2nd) month of occupancy at the Community; and forty percent (40%) if this Agreement terminates and you move out during your third (3rd) month of occupancy at the Community. After three (3) months, the Community Fee is entirely non-refundable. "Moving out" of the Community is defined as moving from the Community and removing your furniture and personal belongings from your apartment.

## ARTICLE IV
## TERMINATION OF AGREEMENT

    **A.**   *Termination by Resident.*  You may terminate this Agreement, with or without cause, by giving the Community thirty (30) days' advance written notice of termination. If the Department of Social Services (the "Department") issues a relocation order, you will not be responsible for meeting this advance notice requirement. You need not cite a specific reason for the termination. You will continue to be responsible for payment of your monthly rates and fees for thirty (30) days after you give notice of termination or until you have moved from the Community and removed all of your possessions from the apartment, whichever is later. This Article IV.A shall survive the termination of this Agreement.

    **A.1.** *Death of Resident and Vacating Apartment.*  This Agreement will immediately terminate upon your death. Notwithstanding Article IV.A.2 (Refunds) below, this Article governs the payment of fees and issuance of refunds upon your death. Your estate (or the person or entity responsible for payment of fees under this Agreement) will continue to be responsible for all outstanding fees due at the time of your death and for fees accruing until your personal property is removed from your apartment. Upon your death your personal property may be removed at any time by appointment or between the hours of <u>8am</u> and <u>8pm</u> by your Responsible Person, by other person(s) whom you have designated in writing in this Agreement, or by a court appointed executor or administrator of your estate, if applicable. Within fifteen (15) days after your personal property is removed from your apartment, your estate, or other person or entity responsible for payment of fees under this Agreement, will receive a refund of any fees paid in advance covering the period after your personal property has been removed. If we assess fees after your death pending the removal of your personal property from your apartment, within three (3) days of becoming aware of your death, we will provide written notice to your responsible person or other individual(s) identified in this Agreement of our Community's policies regarding termination of the Agreement upon death and policies regarding refunds.

(Optional) I <u>GERALD HOPMAN</u> _____ (Resident(s)) designate the following person(s) to remove my personal property from my Apartment upon my death:
<u>JESSICA HOPMAN</u>
Resident's signature: _____ Date: <u>9/2/2018</u> _____

    **A.2.** *Refunds.*  In the event that the California Department of Social Services orders that you be relocated, a pro-rata refund of prepaid rates will be made from the date that all of your personal belongings are removed from your apartment. Refunds will be processed within thirty (30) days. When a resident is out of the Community for health related issues, a refund will be given on assisted living services only after four (4) consecutive days of absence.

**B.**   *Termination by Community on Thirty (30) Days' Notice.*   In accordance with State law, we are required to include in this Agreement the following: The Community may upon thirty (30) days' written notice to you, evict you for one or more of the following reasons:

1.   Nonpayment of the rate for basic services (that is, your total Monthly Rate, including the Assisted Living Fees) within ten (10) days of the due date;

2.   Your failure to comply with State or local law after receiving written notice of the alleged violation;

3.   Your failure to comply with general policies of the Community. These policies are as described below and in the Community Handbook; or

4.   If after admission, it is determined that you have a need not previously identified and a reappraisal has been conducted pursuant to Section 87463 of Title 22 of the California Code of Regulations, and the licensee (that is, the Community) and the person who performs the reappraisal believe that the Community is not appropriate for you.

**C.**   *Termination on Three (3) Days' Notice.*   In addition, we may, upon obtaining prior written approval from the licensing agency (the Department of Social Services), evict you upon three (3) days' written notice to quit. The licensing agency may grant approval for the eviction upon a finding of good cause. Good cause exists if you are engaging in behavior, which is a threat to your mental and/or physical health or safety or to the mental and/or physical health or safety of others in the Community.

**D.**   *Notification.*   If we terminate this Agreement under Article IV.B or C. above, you and your Responsible Person shall receive a notice describing the reasons for such termination, and we will send the Department of Social Services a written report of the termination within five (5) days after the termination. Upon your request, we will assist you in finding an alternate living arrangement.

**E.**   *Appeal and Unlawful Detainer.*   If you wish to appeal a termination, you may do so by requesting a review in writing to the Director of Operations for the Community within ten (10) days following the termination notice. The Director of Operations will schedule a meeting with you and your representatives during which you can present reasons why the termination should not occur. The Director of Operations will then make a final determination, which will be provided to you in writing. If you so request, we will provide you with assistance in finding an alternative living arrangement.

In order to evict a resident who remains at the Community after the effective date of the termination, the Community must file an unlawful detainer action in superior court and receive a written judgment signed by the judge. If the Community pursues an unlawful detainer action, you must be served with a summons and complaint. You have a right to contest the eviction in writing and through a hearing. In addition, you may request that the Department of Social Services investigate the reasons given for an eviction notice.

**F.**   *Change in Condition.*   A change of mental or physical condition that requires your hospitalization will prompt a reappraisal prior to your return to Community. At that time, the Community will determine whether the Community can continue to meet your needs. If, at any time, we are unable to meet your needs, as determined in the sole discretion of the Community, we will assist you and your family with identifying alternate care settings that may be appropriate to your needs. If you do not move out under these circumstances, and the Community determines that it is necessary to provide you with one-on-one supervision in order to protect your health or safety or the health or safety of others, the Community will provide such care and you will be charged for it in accordance with Addendum I.

G.   *Retention Limitations.*  Although it is the hope of the Community that you can reside at the Community for as long as you desire, in accordance with the laws governing residential care facilities for the elderly and the Community's policies, we may need to transfer or discharge you if you do not meet certain retention requirements. Please note that the following conditions, among others, may lead to a reappraisal and a termination of this Agreement in accordance with Article IV.B.4,,above. This Agreement may terminate and we may transfer or discharge you if:

1.   You do not meet the retention requirements established by state law and the Department of Social Services regulations;

2.   You present an immediate physical threat or danger to yourself or others;

3.   You have active communicable tuberculosis or another similar communicable disease;

4.   You require 24-hour, skilled nursing or intermediate care;

5.   You are not elderly and have needs in conflict with other residents or the programs of services offered, or require more care and supervision than other residents;

6.   You have a primary need for care and supervision that results from dementia or a mental disorder resulting in ongoing behavior which would upset the general resident group, or which would require the Community to provide to you a greater amount of care and supervision than other residents at the Community or if you cannot generally benefit from the program of services available at the Community;

7.   You are "bedridden" (other than for a temporary illness or for recovery from surgery) as defined by state law and licensing regulations;

8.   You refuse to accept services required in order for the Community to meet your needs;

9.   You have health care or other needs that cannot be met at the Community for reasons such as licensure, design or staffing;

10.  Your personal physician has determined that you require services not available at the Community;

11.  Your condition changes so that you are considered a wandering risk or you are unable to respond to verbal instructions in an emergency;

12.  You have stage 3 or stage 4 pressure sores;

13.  You require gastrostomy care;

14.  You have a staph infection or other serious infection;

15.  You depend on others to perform all activities of daily living, as set forth in the residential care facility for the elderly regulations; or

16.  You have a tracheostomy.

H.   *Termination of Agreement upon Closure or Change of Use of Community.*  In the event we close or change the use of the Community, we will adhere to the requirements of Addendum XIV.

# ARTICLE V
## MISCELLANEOUS PROVISIONS

A.   *Cooperation with Rules.*  The Community shall have the right to adopt and amend such reasonable rules, regulations and policies, as it deems necessary or desirable for the proper management and operation of the Community as well as for the safety and comfort of its residents. You agree to cooperate with the rules, regulations and policies of the Community as set forth in the Community Handbook. You also agree to cooperate with the policies listed below. You understand that your failure to abide by such general policies may result in termination of the Agreement by the Community. A copy of the Community Handbook has been provided to you and reviewed with you. Notice of any additions or changes to the Community rules, regulations and policies shall be provided to you in writing prior to implementation. In most cases, you will be provided thirty (30) days' advance notice of any such additions or changes.

In accordance with State law, the Community's policies must be reasonable. The following additional general policies apply:

1. Residents of the Community must pay all fees and charges that are owing to the Community in accordance with their Residency Agreement when due.

2. Residents may not breach any representation, covenant, agreement or obligation of the resident under their Residency Agreement, including but not limited to any representation regarding financial status set forth in Addendum XV which is made a part of this Agreement.

3. Residents must not engage in conduct that poses a danger to themselves or others at the Community, must not be disruptive, must not create unsafe conditions, and must not be physically or verbally abusive to other residents or staff.

4. Residents must abide by all rules applicable to motorized vehicle use, as set forth in Addendum VIII.

5. Residents must ensure that their family members, guardians, personal representatives or guests are not disruptive, do not create unsafe conditions, and are not physically or verbally abusive to the detriment of the resident, other residents or staff.

If you wish to suggest changes to the general policies of the Community, you may do so at any time by notifying the Executive Director.

**B.** *Theft and Loss Policy/Insurance.* A copy of the policy and governing Health and Safety Code 1569.152 – 1569.154 has been provided and reviewed with you. Our theft and loss policy is posted in the lobby area and a copy can be provided to you, if requested.

Except when the Community is at fault, the Community's insurance will not protect you against personal liability for injury to guests or other persons in your apartment or any loss or damage to your personal property from theft, fire or any other cause. The Community encourages you to purchase insurance to protect your property and to protect yourself from any potential liability that may arise.

**C.** *Staff Access to Apartment.* Community staff shall be permitted to enter your apartment to perform basic housekeeping services, respond to emergencies, perform assessments, make repairs and improvements, and perform other management functions as the Community deems necessary or advisable. Further, because your apartment at the Community is licensed under laws for Residential Care Facilities for the Elderly, any duly authorized agent of the Department of Social Services may, upon stating the purpose of the visit, enter and inspect any portion of the Community, including your apartment, without advance notice.

**D.** *Resident/Community Files.* The California Department of Social Services has the authority to review Community and resident records without prior notification. In addition, the Department has the authority to privately interview staff and residents.

**E.** *Apartment Hold Policy.* During an absence from the Community, we will hold your apartment as long as you continue to pay your total Monthly Rate. Beginning with the fourth day of absence, residents of the Assisted Living Neighborhood will not be responsible for the Assisted Living Fee component of the Monthly Rate, but shall remain responsible to pay the Rate for Living Accommodations & Standard Fees component of the Monthly Rate.

**F.** *Substitution of Apartment.* The Community may need to substitute your apartment with another apartment to comply with any law or lawful order of any authorized public official, or for any other reasonable purpose, as determined by the Executive Director or his/her designee. Such reasonable purpose may include, but

not be limited to, relocation of a resident's apartment to an area that would facilitate additional observation or supervision. We will make reasonable accommodations with respect to your preferences concerning apartment and roommate choices. We will provide you with thirty (30) days' written notice before substituting your apartment, unless you agree to the request for a change, it is required to fill a vacant bed, or it is necessary due to an emergency.

The Community will pay for all fees required to install cable or phone lines if these were services the resident previously had. You may request an apartment substitution, which request will be granted in the Community's discretion. If you move to an apartment that has a higher monthly rate than your apartment, you will be responsible for the difference in fees. Similarly, if you move to an apartment with a lower monthly rate, the difference in fees will be credited towards your next month's statement. If you move pursuant to your own request, you will be responsible for all costs associated with the move (see Addendum I).

G.   *Outside Services.* If you require home health agency personnel or hospice or other outside assistance, the Community will assist you in accessing these services. For any services provided to you at the Community, you must abide by the Community's policies for such outside providers. These policies provide that you may utilize home health agencies, or other providers of your choice provided that such agencies or providers abide by the rules and regulations of the Community and that the Community may exclude providers that do not comply. Please note that while the Community will provide observation as described in Article II.E of this Agreement, the Community does not monitor the services of outside providers.

H.   *Excluded Items and Services.* The Community shall not be responsible for furnishing or paying for any items or services not expressly included in this Agreement, including but not limited to home health, hospice, medical supplies, incontinence products, physician services, nursing services, surgery, hospital care, treatment or examination of eyes or teeth, medications, vitamins, eyeglasses, contact lenses, hearing aids, orthopedic appliances, prosthetic devices, laboratory tests and x-ray services. You are responsible for paying for any of the above services.

I.   *Security Measures and Emergency Response System.* The Community requires that all guests sign in and follow the rules and policies of Community while on its premises. Residents are asked to sign out when they will be gone from the Community for an extended period of time. For resident safety, Community doors leading outside may have self-latching mechanisms that require a key to open them from the outside in the evening. Emergency response systems in resident apartments include emergency call systems, smoke detectors and sprinkler systems. The Community buildings are equipped with a complete fire protection system.

J.   *Non-Smoking.* The Community has a non-smoking policy that is strictly enforced. Residents and their guests may only smoke in designated outside areas.

K.   *No Management or Property Interest.* This Agreement shall give you no property right or management interest in the Community, or in any of its assets. In addition, you shall have no right to any of the Community's personal property, including furnishings and fixtures in your apartment or in the common areas. This Agreement shall not be construed to be a lease or to confer any rights of tenancy or ownership upon you.

L.   *Visits and Communication.* The Community encourages family visits and communication. Visitors are welcome between the hours of 8:00 a.m. and 8:00 p.m. provided they respect the rights of other residents and staff, abide by the rules and policies set forth in the Community Handbook and sign-in when entering the Community. Visitors outside these hours shall be limited to the resident's room only. In addition a 24 hour advance notice is required to be made with the front office, as a staff member must escort all after hours visitors. Before any visitor stays in your apartment overnight, the visitor must register with the Community and must have prior written approval from the Community's Executive Director. For further information regarding visitors, please refer to the Community Handbook under House Rules.

**M.** *Payor/Guarantor.* Your accommodations and services at the Community shall be paid for by
GERALD HOPMAN _____ ("Payor") or guaranteed by
JESSICA HOPMAN _____ ("Guarantor"). If neither a Payor nor Guarantor signs this
Agreement, you shall be responsible for payment of all fees due under this Agreement. If a Responsible Person
signs the Agreement, you and your Responsible Person shall be jointly and severally liable for payment of all
fees due under this Agreement. You agree immediately to give us written notice of any change in Payor's or
Guarantor's financial condition, address, or telephone number. By signing below, Payor agrees promptly to pay
all fees and charges incurred by you or on your behalf under this Agreement, and Guarantor agrees promptly to
pay any such fees or charges that are not paid by you in a timely manner. Guarantor (if any) shall be required to
sign a separate Guaranty Agreement with us, at our option.

_____ (Payor's signature) _____ (Date)
_____ (Guarantor's signature) _9/2/2018_ (Date)

**N.** *Grievances.* If you have a grievance or complaint regarding the Community, you are welcome to
contact the Executive Director, the Resident Council or Sunrise's corporate office at 7902 Westpark Drive,
McLean, Virginia 22102, (888) 434-4648. The designated person will investigate the grievance and report back
to the resident with a plan of action within 10 business days. It is our desire that any problems that may arise
from time to time can be resolved informally. In addition, you also have the right to contact the Department of
Social Services, Department of Community Care Licensing, and the Long Term Care Ombudsman whose contact
information is below:

Department of Social Services
Department of Community Care Licensing
1000 Corporate Center Drive, Suite 500
Monterey Park, CA 91754
Tel: (323) 980-4934

Long Term Care Ombudsman
Wise & Healthy Aging
Tel: (310) 899-1483

**O.** *Motorized Vehicles.* If you wish to utilize a motorized vehicle at the Community, you must abide
by the terms of the Community's Motorized Vehicle Addendum, Addendum VIII. We strongly encourage
motorized vehicle users to maintain liability insurance in order to protect themselves against liability claims
arising from operation of a motorized vehicle. Any injury or damage caused by a motorized vehicle user is the
responsibility of that person, as set forth in Addendum VIII. A violation of the Motorized Vehicle Addendum
and policy is grounds for termination of this Agreement (see Article IV.B.3, below).

**P.** *Resident and Family Councils.*

1.    *Resident Council.* The Community has a Resident Council composed of Community
residents. Information on the time, place, and dates of Resident Council meetings is posted on the Community
bulletin board. We will also give you the name of the resident representative to contact regarding involvement in
the Resident Council.

2.    *Family Council.* Residents' family members and representatives have the right to form a
family council composed of residents' family members, friends, representatives, and agents. When requested, we
will make our facilities available to relatives, friends, representatives, and agents of residents who wish to form
or participate in a family council. For more information, please refer to the Resident Handbook.

**Q.**    *Arbitration.*  By signing below, "you" (which, for the purposes of this clause shall include the resident, the resident's Responsible Person, agent, conservator, guardian, attorney-in-fact, or other designee, as applicable) agree that any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at the Community , whether made against us or any other individual or entity, including, without limitation, personal injury or wrongful death claims, shall be resolved by submission to neutral, binding arbitration in accordance with the Federal Arbitration Act; except that any claim or dispute involving unlawful detainer proceedings (eviction) or any claims that can be brought in small claims court shall not be subject to arbitration unless both parties agree to arbitrate such proceedings.  If someone other than the resident signs this arbitration clause, he/she understands and agrees that he/she is agreeing to arbitrate on behalf of the resident and on behalf of him/herself as an individual.  **You give up your constitutional right to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration.  You further waive your right to participate in a representative capacity, or to participate as a member of a class, in any litigation or arbitration proceeding with respect to any such dispute.**  The arbitration shall be administered by the Judicial Arbitration and Mediation Services ("JAMS") and shall be conducted in Los Angeles_____California by a single neutral arbitrator selected by JAMS, unless otherwise mutually agreed.  In reaching a decision, the arbitrator shall prepare a written decision that includes findings of fact, the reasons underlying the decision, and conclusions of law.  Each party shall bear its own costs and fees in connection with the arbitration.  **You may withdraw your agreement to arbitrate within thirty (30) days after signing this Agreement by giving written notice of your withdrawal to us.**  After termination of this Agreement, this arbitration clause shall remain in effect for the resolution of all claims and disputes that are unresolved as of that date.  In the event that any part of this arbitration clause is determined to be unenforceable, the remaining portions of the clause shall remain valid and shall be enforced by the parties.  If JAMS is unable to administer the arbitration in accordance with the terms of this clause, the parties shall select another arbitration administrator that is able to do so, and if no such arbitration administrator is available, the parties shall select an arbitrator in accordance with the Federal Arbitration Act.  If the Federal Arbitration Act does not permit arbitration in accordance with this clause, then the matter shall be arbitrated in accordance with state law.

**By signing below, you warrant that this paragraph has been explained to you, that you understand its significance, that you voluntarily agree to be bound by it, and that you understand that agreeing to arbitration is not a condition of admission to the Community.**

Resident(s) signature: _____/_____
Resident's Responsible Person's signature: _____

**Q.**    *Resident Rights.*  Consistent with California law, you shall have the rights set forth in the Statement of Resident's Rights (Addendum III).

**R.**    *Licensing Surveys.*  A copy of licensing surveys for the past year for the Community performed by the Department of Social Services will be posted for you to review.  In addition, copies of licensing reports are available from the Community and copies of licensing reports and other documents pertaining to the Community are available from the Department.

> **Department of Social Services**
> **Community Care Licensing**
> 1000 Corporate Center Drive, #500
> Monterey Park, CA 91754
> Tel: (323) 980-4934

**S.**    *Long-Term Care Insurance.*  If you require our assistance with completing paperwork relating to long-term care insurance reimbursement, we charge a fee for this service as set forth in Addendum I.

T.    *Notices.*  All notices under this Agreement shall be in writing and shall be addressed to the Community at its address printed above or to you at your apartment.  Such notices shall be effective when personally delivered or when deposited in the United States mail, first-class postage prepaid.

U.    *Waiver.*  The failure of the Community in any instance or instances to insist upon your strict performance or observation of or compliance with, any of the terms or provisions of this Agreement, shall not be construed to be a waiver or relinquishment of its right to insist upon your strict compliance with all of the terms and provisions of this Agreement.  In addition, acceptance by the Community of any payment from you after your breach of any term of this Agreement or after providing you with a notice of termination based on a reappraisal as described in Article IV.B.4, above, shall not constitute a waiver of the right of the Community to insist upon full performance of all terms of this Agreement, nor shall it waive the Community's right to terminate this Agreement for any breach previously committed or to terminate in accordance with Article IV.B.4.

V.    *Partial Illegality.*  This Agreement shall be construed in accordance with the laws of the State of California.  If any provision of this Agreement shall be determined to be illegal or not in conformity with applicable laws or regulations, such portion shall be deemed to be modified so as to be in accordance with such laws and regulations, and the validity of the balance of this Agreement shall not be affected.

W.    *Entire Agreement.*  The Community and Resident have not entered into any oral agreements and this written Agreement and the Addenda to this Agreement, together with the Community Handbook represent the Community's and the Resident's entire agreement.  This Agreement may not be changed unless by written agreement.

My signature below as "Resident" or "Responsible Person" indicates that I have read, or have had read and explained to me, the provisions of this Agreement and all its addenda.  I have reviewed and understand the Community Handbook and agree to abide by the current policies and rules of the Community at all times, and agree that these policies and rules are reasonable.  A copy of the Community Handbook has been given to me.  I also acknowledge that I have been given the opportunity to consult with legal counsel and other advisors before signing this Agreement.

This Residency Agreement shall be completed and signed in duplicate. The Community retains one copy and one copy is given to the Resident or Responsible Person.

RESIDENT:

_____          JESSICA HOPMAN
Resident Signature                        _____
                                          Printed Name:


RESPONSIBLE PERSON:

_____          JESSICA HOPMAN
Responsible Person Signature              _____
                                          Printed Name:


SUNRISE:


By:_____
Title:   Executive Director