JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-01054-RGK-JEM | Date | April 16, 2021 |
|---|---|---|---|
| Title | *Gerald Hopman et al v. Sunrise Villa Culver City et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**     **(IN CHAMBERS) Order Re: Defendants' Motion to Transfer [DE 14]; Plaintiffs' Motion to Remand [DE 19]**

## I.     INTRODUCTION

On July 7, 2020, Plaintiff Jessica Hopman ("Ms. Hopman") filed a complaint in state court individually and on behalf of her deceased father, Plaintiff Gerald Hopman ("Mr. Hopman") (collectively, "Plaintiffs"), against Sunrise Villa Culver City ("Sunrise Villa"), Welltower Opco Group LLC ("Welltower"), Sunrise Senior Living Management, Inc., and Shane Fowler ("Fowler") (collectively, "Defendants").[1] Plaintiffs alleged state law claims for (1) elder abuse, in violation of the California Welfare and Institutions Code § 15600, *et seq.*, (2) negligence, (3) breach of contract, (4) willful misconduct, and (5) wrongful death.

On February 24, 2021, Defendants removed this action to federal court, seeking to invoke this Court's federal question jurisdiction on the theory that Plaintiffs' state law claims raise a federal question under the Public Readiness and Emergency Preparedness ("PREP") Act, 42 U.S.C. 247d-6d, *et. seq.* (*See* Notice of Removal, ECF No. 1).

Presently before the Court are: (1) Defendants' Motion to Transfer to the United States District Court for the District of Columbia ("Motion to Transfer"), and; (2) Plaintiffs' Motion to Remand this case to the state court from which it was removed ("Motion to Remand"). For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion to Remand and **DENIES** Defendants' Motion to Transfer.

---

[1]     Plaintiffs allege that Welltower is the licensee or co-licensee of Sunrise Villa; Sunrise Senior Living Management, Inc. is the manager of Sunrise Villa; and Fowler is the Executive Director of Sunrise Villa.

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-01054-RGK-JEM | Date | April 16, 2021 |
|---|---|---|---|
| Title | ***Gerald Hopman et al v. Sunrise Villa Culver City et al*** | | |


## II.    FACTUAL BACKGROUND

In their complaint, Plaintiffs allege the following:

Gerald Hopman was born on September 26, 1931 and died on May 12, 2020 at the age of 88.

Sunrise Villa Culver City is a residential care facility for the elderly located in Los Angeles, California that consists of two living units: (1) an assisted living unit comprised of single apartments for independent residents who need supportive care, and (2) the Terrace Club Neighborhood ("Terrace Club")—a close-quartered memory care unit for residents who have early to moderate stages of memory loss and require daily care.

On September 2, 2018, Mr. Hopman was admitted into a 1-bedroom apartment in the assisted living unit. Mr. Hopman (through his daughter Jessica Hopman) and Defendants executed a Residency Agreement whereby Defendants agreed to provide Mr. Hopman with lodging and care in the assisted living unit, among other services. The Residency Agreement also required Defendants to provide Ms. Hopman with a 30-day written notice if they determined that they needed to substitute Mr. Hopman's apartment for another, or if he needed to be moved to a different unit.

By January 7, 2020, Mr. Hopman's eyesight and mobility had deteriorated. Though Mr. Hopman remained independent, Defendants' staff suggested to Plaintiffs that Mr. Hopman might consider a move to the Terrace Club where he could be cared for and monitored more frequently.

In February of 2020, Ms. Hopman toured the Terrace Club. The following day, Fowler informed Ms. Hopman that the only rooms available in the Terrace Club were shared rooms. Several days later, Defendants' staff began bringing Mr. Hopman to the Terrace Club for daily visits to allow him to acclimate to a potential move away from the assisted living unit. But Mr. Hopman was uncomfortable with his daily surroundings at the Terrace Club and wanted to remain living independently in the assisted living unit.

On March 10, 2020, Ms. Hopman informed Fowler that Mr. Hopman would not like to move into a shared room with another roommate at the Terrace Club. Ms. Hopman and Fowler then agreed that Mr. Hopman would move into a smaller studio apartment in the assisted living unit to allow him to remain living independently. Fowler and Defendants' staff assured Plaintiffs that Defendants' staff could continue to properly care for and assist Mr. Hopman as he lived independently in his new studio apartment.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-01054-RGK-JEM | Date | April 16, 2021 |
|---|---|---|---|
| Title | *Gerald Hopman et al v. Sunrise Villa Culver City et al* | | |

On March 13, 2020, Mr. Hopman moved into his new studio. Shortly thereafter, Ms. Hopman became concerned that, due to the lockdown caused by the COVID-19 pandemic, Mr. Hopman would not receive the care, assistance, and attention he needed. On March 17, 2020, Fowler assured her that Mr. Hopman was doing fine and that there would be no issue with Defendants' staff continuing to properly care for and assist Mr. Hopman while he was isolated in his studio apartment.

But on April 16, 2020, Ms. Hopman learned that Defendants had moved her father into a shared room at Terrace Club without Mr. Hopman's consent and without providing Ms. Hopman with the 30-day notice prescribed in the Residency Agreement. Ms. Hopman was concerned about the move, not only because Mr. Hopman had declined to move from his studio only weeks before, but also because of the potential spread of COVID-19 in the Terrace Club's community of commingled residents.

Two days later Ms. Hopman visited her father at Sunrise Villa. She noticed that the common areas at the assisted living unit were empty, as residents were confined to their rooms and gathering in the common areas was not permitted. However, when Ms. Hopman arrived at the Terrace Club, she noticed that Defendants' staff and the residents were wandering the halls and common areas without masks and without making any attempts to socially distance. The doors of the residents' rooms were left wide open, and during Ms. Hopman's visit, another resident walked into Mr. Hopman's room to carry on a conversation.

On April 30, 2020, Mr. Hopman and the other residents of the Terrace Club were tested for COVID-19. Over the next several days, Mr. Hopman stopped eating and had ongoing gastrointestinal issues. Within a week, Mr. Hopman's COVID-19 test came back positive, as did the tests of Mr. Hopman's roommate, six other Sunrise Villa residents, and nine of Defendants' caregivers. Fowler informed Ms. Hopman that because of the mental conditions of the residents in the Terrace Club, Defendants were not allowed to confine these residents to their rooms and that most illnesses spread through Terrace Club for this reason.

On May 12, 2020, Mr. Hopman passed away from complications due to COVID-19.

## III.   JUDICIAL STANDARD

### A.   Motion to Remand

Title 28 U.S.C. § 1441(a) authorizes defendants to remove a case to federal court when the federal court would have had original jurisdiction over the case. "Upon removal, the district court must determine whether it has subject matter jurisdiction and, if not, it must remand [to state court]." *Dahl v. Rosenfeld*, 316 F.3d 1074, 1076 (9th Cir. 2003); 28 U.S.C. § 1447(c). The federal question removal

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01054-RGK-JEM | Date | April 16, 2021 |
|---|---|---|---|
| Title | *Gerald Hopman et al v. Sunrise Villa Culver City et al* | | |

statute is strictly construed against a finding of removal jurisdiction. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded . . . Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

The party seeking removal bears the burden of establishing federal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). Here, Defendants' asserted basis for removal is federal question jurisdiction, which generally requires that a federal claim appear on the face of the plaintiff's "well-pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); 28 U.S.C. § 1331. Thus, a plaintiff may "generally avoid federal jurisdiction by pleading solely state-law claims." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005). Under the complete preemption doctrine, however, a state law claim is treated as arising under federal law if it is completely preempted by federal law. *Id.*; *Caterpillar Inc.*, 482 U.S. at 393.

**B.  Motion to Transfer Under 28 U.S.C. § 1631**

A district court that lacks jurisdiction over an action may transfer that action to an appropriate forum pursuant to 28 U.S.C. § 1631. Section 1631 provides that "[w]henever a . . . court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action or appeal could have been brought at the time it was filed[.]" 28 U.S.C. § 1631. The Ninth Circuit has held that, "[b]ecause the statute's language is mandatory, federal courts should consider transfer without motion by the parties." *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001) (citations omitted). A court should transfer an action pursuant to "§ 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Id.*

**IV.  DISCUSSION**

In their notice of removal, Defendants sought to invoke this Court's federal question jurisdiction under two theories: the complete preemption doctrine and the doctrine articulated by the Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing.*, 545 U.S. 308 (2005). These doctrines apply, Defendants assert, because the issues raised in Plaintiffs' complaint implicate important federal concerns that are addressed by the PREP Act.

Plaintiffs, in their Motion to Remand, argue that their claims do not fall within the scope of the PREP Act, and thus, that Defendants have failed to establish that the Court has jurisdiction over Plaintiff's claims under the complete preemption doctrine or the *Grable* doctrine.

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-01054-RGK-JEM | | Date | April 16, 2021 |
|---|---|---|---|---|
| Title | *Gerald Hopman et al v. Sunrise Villa Culver City et al* | | | |

Defendants, in their Motion to Transfer, assert that Plaintiffs' claim for willful misconduct and other allegations of willful misconduct fall within the scope of the PREP Act, and as such, that the Court must transfer this action to the United States District Court for the District of Columbia (the "D.D.C.").

Resolution of both motions turns on whether any of Plaintiffs' claims are susceptible to federal question jurisdiction under the complete preemption doctrine or the *Grable* doctrine. If there is no basis for a federal court to exercise subject matter jurisdiction over Plaintiffs' claims, this action must be remanded. If, on the other hand, Plaintiffs' claim for willful misconduct is susceptible to federal jurisdiction, the Court must transfer this action to the D.D.C., so long as transfer would be in the interest of justice. *See* 42 U.S.C. § 247d-6d(d)(1), (e)(1) (Claims that fall within the scope of the PREP Act asserted "against a covered person for death or serious physical injury proximately caused by willful misconduct . . . by such covered person" "shall be filed and maintained only in the United States District Court for the District of Columbia.").

For the reasons discussed below, the Court concludes that Defendants fail to establish a basis for the exercise of federal jurisdiction under both the complete preemption doctrine and *Grable* doctrine because Plaintiffs' state law claims do not fall within the scope of the PREP Act.

### A.    <u>Plaintiffs' State Law Claims Are Not Completely Preempted by the PREP Act</u>

Under the complete preemption doctrine, a state law claim is treated as arising under federal law if it is completely preempted by federal law. *Valles*, 410 F.3d at 1075. For a federal statute to completely preempt a state law claim, the federal statute must "provide[] the exclusive cause of action for the [state law] claim asserted and also set forth procedures and remedies governing that cause of action." *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003); *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1245 (9th Cir. 2009) ("[A] federal statute must provide the 'exclusive cause of action' for complete pre-emption to apply[.]"). Complete preemption for purposes of federal question jurisdiction "exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland v. BP PLC*, 969 F.3d 895, 906 (9th Cir. 2020) (quoting *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018)).

The PREP Act, by and large, is an immunity statute. The Act generally provides that

a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the Secretary of Health and Human Services] has been issued with respect to such countermeasure.

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-01054-RGK-JEM | Date | April 16, 2021 |
|---|---|---|---|
| Title | *Gerald Hopman et al v. Sunrise Villa Culver City et al* | | |

42 U.S.C. § 247d-6d(a)(1). In March 2020, the Secretary of Health and Human Services ("the Secretary") issued a declaration under the PREP Act regarding the COVID-19 pandemic. 85 Fed. Reg. 15,198 (Mar. 17, 2020). The Declaration has since been amended several times.

In the Fourth Amendment to the Declaration, the Secretary declared that "[w]here there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to . . . the administration to . . . an individual[,]'" and thus, that "[p]rioritization or purposeful allocation of a Covered Countermeasure . . . can fall within the PREP Act and this Declaration's liability protections." Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79190-01.

A covered countermeasure is defined by the PREP Act as:

- "a qualified pandemic or epidemic product[;]"
- "a security countermeasure[,]" *i.e.*, a "drug," "biological product," or "device" that meets specified qualifications;
- a "drug . . . , biological product . . . , or device . . . that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act [*i.e.*, FDCA]; or"
- "a respiratory protective device that is approved by the National Institute for Occupational Safety and Health [*i.e.*, NIOSH], . . . and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title."

42 U.S.C. § 247d-6d(1)(A)–(D).

Here, Plaintiffs do not allege any injury "caused by, arising out of, relating to, or resulting from the administration [(or failure to administer)] to or the use by an individual of a covered countermeasure." Plaintiffs' complaint appears to reference covered countermeasures in several places. For example, Plaintiffs allege that when Ms. Hopman visited her father at Terrace Club on April 18, 2020, "she noticed that Defendants' staff and the residents were wandering the halls and common areas without masks[2] and without making any attempts to socially distance." (*Id.* ¶ 43). Plaintiffs also allege

---

2       For purposes of this Order only, the Court adopts Defendants' position that Plaintiffs' mention of an unspecified type of mask refers to a covered countermeasure.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-01054-RGK-JEM | Date | April 16, 2021 |
|---|---|---|---|
| Title | *Gerald Hopman et al v. Sunrise Villa Culver City et al* | | |

that "[o]n April 30, 2020, Mr.[Hopman] and the other residents in Terrace Club were tested[3] for COVID-19." (*Id.* ¶ 46). But Plaintiffs do not allege that their injuries are connected to Defendants' non-administration of masks or administration of tests.

Rather, Plaintiffs allege that "because of the mental conditions of the residents in Terrace Club, Defendants" did not "confine these residents to their rooms and that most illnesses spread through Terrace Club for this reason." (*Id.* ¶ 44). Plaintiffs further allege that Defendants made the unilateral decision to transfer Mr. Hopman from his studio in the assisted living unit to a shared room in the Terrace Club without notifying Ms. Hopman or obtaining Mr. Hopman's consent. (*Id.* ¶ 41). Thus, although Plaintiffs reference covered countermeasures, the injuries alleged in their complaint arise from Defendants' decision to transfer Mr. Hopman to a shared room in the Terrace Club in the midst of a pandemic, not the administration (or non-administration) of a covered countermeasure.

In opposition, Defendants argue that "Plaintiffs' allegations establish that Defendants were engaged in the administration or use of covered countermeasures." (Defs.' Opp. to Pls.' Mot. to Remand at 12, ECF No. 21). "In particular, Plaintiffs plead the use of diagnostic testing for COVID-19 at Sunrise Villa for both staff and residents on multiple occasions." (*Id.* at 13). "These affirmative allegations," Defendants argue, "effectively plead plaintiffs out of court by expressly invoking issues governed by the PREP Act." (*Id.* at 15) (internal citation and brackets omitted).

Defendants' argument demonstrates a fundamental flaw in their theory that Plaintiffs' claims are removable to federal court. Defendants ask the Court to validate their removal based on Plaintiffs' reference to the use of devices or products in their facility that qualify as covered countermeasures. Such allegations do not trigger complete preemption under the PREP Act: only "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure" bring a claim within the ambit of the Act. Here, Plaintiffs' do not allege that their injuries are connected to Defendants' use or non-use of a covered countermeasure.

Accordingly, because Plaintiffs' claims, as alleged, do not fall within the scope of the PREP Act, Defendants have failed to establish that Plaintiffs' claims are completely preempted.

---

[3]     For purposes of this Order only, the Court adopts Defendants' position that the COVID-19 tests referenced in Plaintiffs' Complaint are covered countermeasures.

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-01054-RGK-JEM | Date | April 16, 2021 |
|---|---|---|---|
| Title | *Gerald Hopman et al v. Sunrise Villa Culver City et al* | | |

### B.   The Court Does Not Have Jurisdiction Under the *Grable* Doctrine

Defendants also argue that the Court has federal question jurisdiction over Plaintiffs' claims pursuant to the *Grable* doctrine. The Court disagrees.

In *Grable*, the Supreme Court held that a plaintiff's state law claim to quiet title in a parcel of real property raised a federal question for purposes of 28 U.S.C. § 1331. The Court so held because the plaintiff "premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law[,]" and "[w]hether the plaintiff was given notice within the meaning of the federal statute [was] thus an essential element of its quiet title claim[.]"  *Grable*, 545 U.S. at 314–15. Under *Grable*, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

No federal issue is "necessarily raised" by Plaintiffs' complaint because an interpretation of the PREP Act is not an essential element of any of Plaintiffs' state law claims. Accordingly, Defendants' assertion of PREP Act immunity does not implicate the *Grable* doctrine.[4] Though nothing precludes Defendants from raising PREP Act immunity defensively before a court of competent jurisdiction, this is not that Court.

### C.   The Court Denies Defendants' Motion to Transfer

As noted above, a court should transfer an action pursuant to 28 U.S.C. § 1631 "if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have

---

[4]      The Office of the General Counsel ("OGC") of the Department of Health and Human Services has opined "that there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable* . . . in having a uniform interpretation of the PREP Act." 85 Fed. Reg. 79190-01. The Court joins the rising tide of district court opinions that have found the OGC's opinion as to the *Grable* doctrine's relationship to the PREP Act unpersuasive. *See, e.g.*, *Est. of McCalebb v. AG Lynwood, LLC*, No. 2:20-CV-09746-SB-PVC, 2021 WL 911951, at *3 (C.D. Cal. Mar. 1, 2021) ("Neither the Secretary nor the OGC provides any significant analysis of *Grable*'s narrow holding and its two-pronged test. Deference to the Secretary's jurisdictional assertion is not due, and adherence to his conclusory assertion is not warranted."); *Dupervil v. All. Health Operations, LCC*, No. 20-CV-4042-PKC-PK, 2021 WL 355137, at *14 (E.D.N.Y. Feb. 2, 2021) (declining to follow the OGC's position and noting that the OGC's Advisory Opinion selectively misquotes *Grable*).

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-01054-RGK-JEM | Date | April 16, 2021 |
|---|---|---|---|
| Title | *Gerald Hopman et al v. Sunrise Villa Culver City et al* | | |

exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Cruz-Aguilera*, 245 F.3d at 1074.

Here, Defendants seek transfer of this action to the D.D.C. based on their assertion that the D.D.C. could have exercised jurisdiction over at least Plaintiffs' willful misconduct claim at the time that the complaint was filed. The Court disagrees.

For complete preemption to apply, "a federal statute must provide the 'exclusive cause of action[.]'" *Moore-Thomas*, 553 F.3d at 1245. The PREP Act establishes a single exclusive federal cause of action. Specifically, where a plaintiff's claim falls within the scope of the PREP Act's immunity provision, the Act establishes a single "exception to the immunity from suit and liability of covered persons" by way of "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . by such covered person." 42 U.S.C. § 247d-6d(d)(1). The Act further provides that the only court that may exercise jurisdiction over such a claim is the United States District Court for the District of Columbia. *Id.* § 247d-6d(e)(1).

Thus, for the D.D.C. to have jurisdiction over Plaintiffs' willful misconduct claim under the complete preemption doctrine, Plaintiffs' claim would have to (1) fall within the scope of the PREP Act's immunity provision, and (2) be premised on allegations of death or serious physical injury proximately caused by willful misconduct by a person covered under the Act.

As discussed above with respect to Plaintiffs' Motion to Remand, Plaintiffs' claims do not fall within the scope of the PREP Act's immunity provision. Thus, even though Plaintiffs assert a claim for willful misconduct resulting in the death of Mr. Hopman, that claim is not completely preempted by the exclusive federal cause of action provided in 42 U.S.C. § 247d-6d(d)(1).

## V.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Plaintiffs' Motion to Remand, **DENIES** Defendants' Motion to Transfer, and **REMANDS** this action to the state court from which it was removed.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    _____